496 So.2d 394 (1986)
STATE of Louisiana
v.
Edward DEBOUE.
No. KA-5384.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1986.
Rehearing Denied November 19, 1986.
*397 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., A. Hammond Scott, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of Louisiana.
John M. Lawrence, Shreveport, for defendant-appellant Edward Deboue.
Before GULOTTA, KLEES and BYRNES, JJ.
KLEES, Judge.
On May 24, 1984, Edward James Deboue and Thomas Mitchell Deboue were charged by grand jury indictment with two counts of first degree murder in violation of R.S. 14:30. They were arraigned on May 30, 1984 and entered pleas of not guilty to both counts. After a jury trial, the defendants were found guilty as charged on both counts. As to Edward Deboue, the jury recommended a life sentence on count two but was undecided on count one. On November 2, 1984, a motion for new trial was filed by Edward Deboue. That motion was denied on December 19, 1984. After waiving all delays, Edward Deboue was sentenced to life at hard labor without benefit of parole, probation or suspension of sentence on each count, to be served consecutively. A motion for appeal was filed by Edward Deboue on December 19, 1984 and was granted on the same day.
*398 FACTS:
On March 29, 1984 at about midnight, Thomas and Edward Deboue were involved in a dice game. Edward lost all of his money as a result of the game. In an effort to get more money the two brothers formulated a plan to go to the apartment of Betlina Miller because she was never at home and she frequently kept cash in her apartment. Arriving at the Miller home, they pulled the window screen away from the front window to gain entry into the apartment. Ms. Miller was at work but her six-year-old daughter Niqquika and her twelve-year-old brother Jamal were at home.
The two brothers killed Jamal by inflicting several wounds to his throat with razor blades. The defendants than killed Niqquika in the same manner.
When a neighbor, Alvin Hite, heard noises in the Miller apartment he knocked on the door and the defendants ran from the apartment down the fire escape. They went to their mother's home and were picked up by their sister, Lorraine Morgan at about 1:00 a.m. on March 30, 1984.
Later in the day the defendants, along with Ms. Morgan and another sister Delores, drove to Biloxi where Ms. Morgan purchased two bus tickets to New York for the defendants. The defendants were apprehended by New York authorities when they reached that State.

Errors Patent
A review of the record for errors patent reveals that there are none.

Assignments of Error

Numbers One, Two, Three
By these assignments of error the defendant, Edward Deboue, maintains that the trial court erred in denying various pre-trial motions filed by him. The defendant has abandoned assignments of error one and three and they relate to the constitutionality of C.Cr.P. art. 798(2). However the defendant maintains the argument in assignment number two that the trial court erred by not requiring the State to make a pre-trial factual distinction between first and second degree murder where C.Cr.P. art. 798(2) is used to exclude jurors.
The defendant filed a motion to require the State to establish a prima-facie case of aggravating circumstances before trial, alleging that this would be necessary since the State would attempt to use the allegation of first degree murder as a basis for exercising challenges for cause pursuant to C.Cr.P. art. 798(2) to disqualify jurors. The defendant cites no authority for requiring the State to make a pre-trial showing of aggravating circumstances justifying a charge of first degree murder.
The same argument was presented to this court in State v. Lopez, 484 So.2d 217 (La.App. 4th Cir.1986). Rejecting this argument, the court held:
In this case, the defendant was charged by grand jury indictment with first degree murder. Thus the defendant has had a consideration of the prima facie case against him by the grand jury. The decision of whether aggravating circumstances actually exist to the extent necessary to prove first degree murder is a question for the trier of fact. Lopez, supra at 222.
The same situation exists in the instant case. This assignment is without merit.

Number Four
The defendant urges that the failure of the prosecutor to disclose information favorable to the defendant compels reversal of the conviction. Specifically, the defendant alleges that Ernest Martin, Sr., an eyewitness to the flight, was interviewed by police officers and gave a description which did not fit him or his brother, thereby adding creedence to his claim that they entered the apartment just after the real killers fled.
The United States Supreme Court has held that the Fourteenth Amendment mandates that the prosecution disclose to the defense any evidence favorable to the defendant if such evidence is material to his guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 9 L.Ed.2d 215 *399 (1963). In State v. Rosiere, 488 So.2d 965, (La.1985), our Supreme Court discussed the purpose of the Brady rule:
The Brady rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to defendant which is material to guilt or punishment. Id at 970.
The witness in question, Ernest Martin, Sr., testified at the hearing on the motion for new trial. He testified that he was in his apartment when he heard a shot. He looked out of the window and saw his neighbor, Alvin Hite. In answer to Mr. Martin's inquiry, Mr. Hite said "somebody's trying to break into Tina's house." Mr. Martin testified that he heard two more shots and saw two men, one limping, running through the breezeway. Mr. Hite told Mr. Martin that one of the men was shot.
Both Alvin Hite and Ernest Martin were questioned by police. However, only Mr. Hite testified at trial. The defendant contends that the description of the two men who were seen running from the crime scene differed significantly from his on physical appearance or that of his brother and therefore supports his theory that two other men committed the crime but ran away just before he and his brother arrived.
Mr. Martin described the two men he saw as being teenagers, one tall and light skinned, one short and dark-skinned. This was not an accurate description of the defendants. However, Mr. Martin admitted that it was dark and that his vision is poor.
When questioned about what he actually told police during the preliminary investigation, Mr. Martin was unsure of what questions where asked or how much of a description he gave to police officers. The police report of that interview was read into the record. There is nothing in that report which is exculpatory for the defendant. There was also a statement that the district attorney's office made several unsuccessful attempts to locate Mr. Martin prior to trial.
It therefore appears that the State had no exculpatory information at trial. Further, in view of Mr. Martin's testimony at the hearing on the motion for new trial it does not appear that a miscarriage of justice occurred.
This assignment is without merit.

Number Five
The defendant alleges that the trial court erred in denying his motion for change of venue. The defendant filed a motion for a change of venue alleging that, because "the crime charged is a brutal homicide of children and the newspapers and television have created such sensational accounts about the killings that the public is outraged to the extent of not being a source of fair and impartial jurors".
C.Cr.P. art. 622 provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
Relevant factors to be considered in change of venue requests were listed in State v. Bell, 315 So.2d 307 (La.1975), appeal after remand 346 So.2d 1090 (La.1977). Those factors are:
(1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the *400 release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. Bell supra at 311.
Recently the Supreme Court decided State v. Wilson, 467 So.2d 503 (La.1985), cert. den. Wilson v. Louisiana, ___ U.S. ___ 106 S.Ct. 281, 88 L.Ed.2d 246 (1985) which incorporates Art. 622 and the factors in Bell in a full discussion of the change of venue concept. In part, that discussion reads as follows:
In urging a change of venue for his trial, an accused must establish that there exists such prejudice in the collective mind of the community that a fair trial is impossible. The defendant must show more than mere public knowledge of facts surrounding the offense to be entitled to have his trial moved to another parish. Whether such showing has been made is a question addressed to the trial court's sound discretion, which will not be disturbed on appeal absent an affirmative showing of error and abuse of that discretion. State v. Vaccaro, 411 So.2d 415, 424 (La.1982); State v. Adams, 394 So.2d 1204 (La.1981). In reviewing a denial of a motion for a change of venue, this Court will make an "independent evaluation of the facts to determine whether the accused received a fair trial, unfettered by outside influences." State v. Willie, 410 So.2d 1019, 1024 (La.1982); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).
The change of venue concept should operate where the state of the public mind against the defendant is such that jurors will not completely answer honestly upon their voir dire, or witnessess will be so affected by the public atmosphere that they will not testify freely and frankly. Wilson supra at 512.
In brief the defendant urges that the publicity surrounding the case and the depiction of the defendants as fugitives from justice warranted a change of venue. The trial judge denied the motion during trial, after voir dire had been completed.
Potential jurors were questioned by both defense lawyers and the district attorney on the issue of publicity. One juror, Ms. White, admitted that she had read accounts of the crime. She was then questioned out of the presence of the other potential jurors and dismissed for cause. Two other jurors admitted that they heard press accounts of the crime but denied that the knowledge would affect their judgment.
The defendant argues that some of the thirty-three jurors who were dismissed for cause because of their opposition to the death penalty chose not to serve because they would prefer not to admit their bias brought about by the publicity. Even if there were any way to factually support this contention, it would have no bearing on the issue of whether this defendant obtained a fair and impartial jury since those jurors did not serve.
In this case, fifty-seven potential jurors were dismissed for cause. The State exercised thirteen peremptory challenges and both defendants exercised eight. A reading of the voir dire shows that the trial court allowed both sides ample opportunity to obtain a fair and impartial jury. Further, it does not appear that the publicity in this case was of such a character that a juror exposed to it should have been presumed to be prejudiced, regardless of whether he indicated that he could remain impartial. Wilson, supra. Accordingly, there does not appear to be an abuse of discretion in the trial court's decision. This assignment is without merit.

Number Six
The defendant alleges that the trial court erred in refusing to grant the defendant's challenge for cause as to a prospective juror.
*401 During voir dire one of the prospective jurors, Barbara Sweeney, reported to the court that she knew Mr. Connick and an the assistant district attorneys who was not involved in this case. Ms. Sweeney stated that her husband had been a professor at Tulane for sixteen years and that, although she did not know Mr. Connick as well as her husband, she had met Connick at various social functions. When questioned further, Ms. Sweeney stated that she had not discussed the case with Mr. Connick and that she did not feel that these factors would affect her ability to serve on the jury.
Ms. Sweeney also stated that she had a daughter-in-law school who hoped to be hired by the district attorney's office. When questioned by the defense counsel, Ms. Sweeney admitted that she may have been influenced by this relationship and that she was not sure that she could be fair and impartial. However, she later stated that she could be fair. An earlier challenge for cause made by the co-defendant, Thomas Deboue, was denied by the trial court with no defense objection. The defendant subsequently challenged Ms. Sweeney peremptorialy.
C.Cr.P. art. 800(A) provides:
A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection.
Although the defendant alleges that he made a contemporaneous objection, the record disproves this allegation. Because the defendant did not make the required objection to the trial court's ruling, he may not assign that ruling as error. This assignment is without merit.

Number Seven
The defendant contends that the trial judge erred in refusing to grant a motion for mistrial and/or removal of assistant district attorney Alexander as prosecutor in this case. That motion was based on statements made by Evelyn Duhon one of the jurors.
After Ms. Duhon was sworn in as a juror she indicated to the court that she was personally acquainted with one of the prosecuting attorneys. Ms. Duhon was questioned by the court and by the defense attorney. She stated that although she was a neighbor of Mr. Alexander and saw him regularly, she had never discussed this case nor would it affect her judgment.
Mr. Alexander was questioned outside of the presence of the jury. He stated that he had lived next door to Ms. Duhon for about four months and exchanged pleasantries with her but had not discussed the case at all. The defense requested a mistrial which was denied. The defense made further motions for a mistrial, to quash the jury panel and to remove Mr. Alexander from the case. These were also denied. At this point Ms. Duhon was questioned again, this time outside of the presence of the jury. After this testimony, the State challenged the juror for cause. That was denied. Both defense counsel, after a consultation, made it clear to the court that they did not wish to challenge the juror for cause.
The defendant argues that the motion for mistrial should have been granted because Ms. Duhon made a false statement within the meaning of C.Cr.P. art. 775(6).
There was no false statement by Ms. Duhon in this case. She simply pointed out to the court that she knew one of the assistant district attorneys in the case. This occurred before trial and there is no showing that it prevented the defendant from obtaining a fair trial. See State v. Lowenfield, 495 So.2d 1245, (La.1985).
In the second part of the argument, the defendant contends that the assistant district attorney in question should have been removed from the case because of prosecutorial misconduct in not disclosing his relationship with Ms. Duhon.
The grounds and procedure for recusation of a district attorney are set forth *402 in C.Cr.P. art. 680 et seq. Those articles require the filing of a written motion stating the grounds for recusation. A district attorney can then only be recused after a contradictory hearing. In such action the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Edwards, 420 So.2d 663 (La.1982); State v. Vaccaro, 411 So.2d 415 (La.1982).
In the instant case, the defendant did not file a written motion to recuse as required by C.Cr.P. art. 681. Thus it appears that the judge was correct in denying the defendant's motion since an oral motion for recusal cannot be considered.
Even assuming that the motion would have been heard, it does not state a ground for recusal within C.Cr.P. art. 680. This assignment is without merit.

Number Eight
The defendant contends that the trial court erred in refusing to grant a motion for mistrial urged during the prosecutor's opening argument. During opening argument the following occurred:
MR. DUBELIER:
They realized that the children were there, they realized that they could not enter the home without being known and without being recognized, they proceeded to revert to the lowest possible form of criminal behavior, the bottom denominator, the rule that dead souls tell no tales, that dead witnesses cannot come into court and identify, and that dead children can never tell what happened
MR. LAWRENCE:
Your Honor, I object.
THE COURT:
Sustained.
MR. LAWRENCE
I would move for a mistrial at this time.
THE COURT:
Sustained. There's a place for that, if it does exist, in the closing argument.
MR. LAWRENCE:
Your Honor, would you rule on the mistrial motion?
THE COURT:
The request for a mistrial is denied. Your are admonished to disregard the comments just made by the District Attorney.
Thank you, ladies and gentlemen of the jury.
The scope of the opening statement is defined in C.Cr.P. art. 766 which reads as follows:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
That article does not provide sanction if the defense counsel's argument goes beyond permissible grounds. However, C.Cr.P. arts. 770 and 771 do provide remedies for improper statements made by the prosecutor.
Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defenant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark *403 or comment but shall not declare a mistrial.
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that is might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition if not sufficient to assure the defendant a fair trial.
The remarks made by the prosecutor in this instance did not fall within the scope of Art. 770, and the granting of a mistrial was therefore discretionary. A mistrial is a drastic remedy and except in instances in which it is mandatory, is only warranted if substantial prejudice results which would deprive defendant of a fair trial. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Dilton Robinson, 490 So.2d 501, (La.App. 4th Cir., 1986). Moreover, the trial court's rulings with regard to the scope of opening statement should not be disturbed absent a manifest abuse of discretion. State v. Denney, 352 So.2d 204 (La.1977); State v. Prosper, 455 So.2d 673 (La.App. 4th Cir.1984).
If the appellate court finds that the prosecutor's argument contained improper remarks, a reversal is warranted only if the court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Jarman, 445 So.2d 1184 (La.1984). Credit should be accorded to the good sense and fairmindedness of jurors who have heard the evidence. State v. Dupre, 408 So.2d 1229 (La.1982); State v. Dilton, supra.
In the instant case, the trial court sustained the defendant's objection and admonished the jury to disregard the prosecutor's remark. Any prejudice which may have resulted from the prosecutor's remarks was cured by that admonition. This assignment is without merit.

Number Nine
The defendant urges that his right to cross-examine Officer Randy Varuso was unconstitutionally curtailed. Officer Varuso testified concerning the initial investigation of the crime scene. During the cross-examination the defense attorney questioned Officer Varuso about the description of the perpetrators he obtained from one of the witnesses. Objections to these questions by the state based on hearsay were at first sustained. However, the trial judge changed this ruling and permitted the cross-examination.
Other objections which were sustained included hearsay objections to defense counsel's questions concerning what information Officer Varuso received from Mr. Hite regarding the escape route used by the perpetrators. However, the officer was allowed to testify that he made an independent determination of the route the perpetrators took as they left the apartment.
A reading of the transcript reveals no foundation for the defendant's allegation that the cross-examination of this witness was unconstitutionally restricted. This assignment is without merit.

Number Ten
By this assignment of error, the defendant urges that the trial judge erred in placing into the record his recollection of an unrecorded statement previously made in chambers. The incident occurred after *404 Lorraine Morgan had been examined. Before allowing cross-examination, the trial court removed the jury from the room and stated for the record that previously, in chambers, the assistant district attorney stated that he had no intention of prosecuting Ms. Morgan as an accessory after the fact. The defense attorney objected on the ground that it was a purely gratuitous statement on the part of the assistant district attorney. There were also objections on the ground that placing such information in the record would be prejudicial because it would support Ms. Morgan's credibility.
The defendant first argues that a record should have been made of the proceedings in chambers rather than introduceing it into the record later in the form of the trial judge's recollection. C.Cr.P. art. 843 provides:
In felony cases, and on motion of the court, the state, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, ruling, orders, and charges by the court, and objections questions, statements and arguments of counsel. The official revision comment to that article states that, "Art. 843 provides for the recordation of proceedings to be available to be transcribed if designated to support an assignment of error."
The official revision comment to that article states that, "Art. 843 provides for the recordation of proceedings to be available to be transcribed if designated to support an assignment of error."
It is unlikely that the comment made by the assistant district attorney in chambers is the type of "proceeding" anticipated by this article. Further, the defendant does not assign any part of the unrecorded conversation as error, nor does he contend that the trial judge is inaccurate in his recollection.
The main thrust of the defendant's objection is that this error will unfairly enhance Ms. Morgan's credibility in the eyes of any reviewing court which is required to decide the sufficiency of evidence. The defendant also argues that the trial court usurped the function of the jury, which is the trier of fact and the exclusive judge of a witnesses' credibility.
These arguments are unpersuasive since the jury was not present in the courtroom at the time the exchange took place. Therefore, any remarks made by the judge regarding the district attorney's statement that the witness would not be prosecuted would not have affected the jury's consideration of the witness' credibility and has not affected ours.
This Court must look only to the evidence adduced at trial and follow the standards of sufficiency in reviewing that evidence. This Court may not review credibility. Those evaluations are well within the province of the jury as trier of fact. State v. Bailey, 457 So.2d 94 (La.App. 4th Cir.1984).
Thus, even assuming the trial court erred in recording its recollections of statements made by the district attorney in chambers, any error is harmless since it did not prejudice the defendant in any way. C.Cr.P. art. 921. This assignment is without merit.

Numbers Eleven and Twelve
By these two assignments of error the defendant alleges that the trial court erred in denying his motion for severance from the co-defendant, Thomas Deboue.
The defendant filed a motion for severance on October 9, 1984, based on the grounds that the statement made in New York by Thomas Deboue would prejudice the defendant Edward Deboue since Edward Deboue would not be afforded the right to cross-examine Thomas Deboue to explain or refute the statement.
C.Cr.P. art. 704 provides:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately, or

*405 (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Neither that article nor its predecessor article provides the trial judge with a precise standard by which to exercise his authority, but an "antagonistic defenses" test has developed. To meet the test, a defendant must show that a joint trial would be prejudicial to his interests. State v. Williams, 416 So.2d 914 (La.1982). The mere assertion that defenses will be antagonistic, does not require severance. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Smith, 470 So.2d 128 (La.App. 4th Cir.1985), rev'd. on other grounds, 491 So.2d 641, (La.1986). The mover must demonstrate that defenses to be presented will be antagonistic. State v. Turner, 365 So.2d 1352 (La.1978); State v. Smith, supra. When it is clear that the defenses of the co-defendants are mutually antagonistic to the extent that a defendant must defend not only against the state, but also against his co-defendant, justice requires a severance. State v. Thibodeaux, 315 So.2d 769 (La.1975). It is incumbent upon the mover to clearly demonstrate that the defenses of the co-defendants are mutually antagonistic such that each defendant attempts to place the blame on the other. State v. Randy Lutz, 491 So.2d 716, (La.App. 4th Cir., 1986).
That is not the situation in the instant case. The defendant here complains of a statement made by the co-defendant in response to a hypothetical question posed by New York police officers, "How can anyone kill their own kids." To which Thomas Deboue replied, "They weren't my kids." That statement, although incriminating, does not shift the blame to the defendant.
While it is true that antagonistic defenses do not represent the only instances where denial of a motion to sever will constitute an abuse of discretion, State v. Webb, 424 So.2d 233 (La.1982), there must be a showing that the ends of justice will be best served by a severance. C.Cr.P. art. 704. No such showing has been made in this case. Since there is no showing that there was a clear abuse of discretion on the part of the trial judge, there is no merit to these assignments.

Number Thirteen
The defendant alleges that the trial judge did not maintain his position of neutrality during the trial. The defendant assigns various rulings by the trial court which evidence the court's partiality to the state.
Specifically, the defendant complains that the defense counsel was rebuked by the trial judge. However, the transcript shows that the judge merely demanded that a witness be allowed to complete her answer when the defense attorney attempted to withdraw his question after it was answered by the witness.
The defendant also cites an instance where the defense counsel was berated by the trial judge. During cross-examination by a state rebuttal witness, the following occurred:
Q. Let me see, In other words, if he was facing in this direction walking, I wouldn't see his drag (demonstrating)? Now get it straight, let me pause now.
A. I'm trying
Q. I realize that you're trying to avoid the truth, but
BY MR. DUBELIER:
Objection.
BY THE COURT:
Sustained, Sustained, Mr. Williams.
BY MR. WILLIAMS:
I'm sorry.
BY THE COURT:
No, you're not sorry. That's been repeated throughout this trial. I want no more of it. No more of it. Sorry is not enough. You know better.
In this case, the objection was correctly sustained. The trial judge had on several occasions rebuked both the defense counsel and the district attorney in an effort to prevent improper, argumentative questions of witnesses. There is no reason to believe that the jury was prejudiced against the *406 defendant by this procedure. In fact, another incident complained of by the defendant is actually an example of the trial judge reprimanding the district attorney for badgering the defendant.
The defendant also alleges that the prosecutor was given "free reign" in his cross examination of the defendant. This is not the case. The prosecutor asked the defendant to comment on the accuracy of Mrs. Deboue's testimony. A defense objection was sustained and the jury was admonished to disregard the prosecutor's statement. The defense counsel requested and was granted a bench conference after which the prosecutor resumed cross-examination of the defendant without objection by the defense.
In support of his claim the defendant cites State v. Duplessis, 457 So.2d 604 (La.1984). In that case, blantly defiant tactics by the prosecutor were allowed with no admonition made to the jury by the trial judge to remedy the defects. There were also limitations on voir dire which were so restrictive as to deprive the defendant of his constitutional right to a full and complete voir dire. The Duplessis court found that the tenor of the trial judge in that case colored the entire proceedings and undermined the judicial atmosphere necessary to insure the proper conduct of the trial.
A careful reading of the trial transcript simply does not justify the defendant's claim that the trial judge in the instant case lost his role as neutral arbitrator or conducted the trial in such a manner as to prejudice the jury against the defendant. This assignment is without merit.

Number Fourteen
The defendant contends that the trial court erred in denying his motion for mistrial based on improper state rebuttal.
This assignment is based upon two separate arguments. The defendant first argues that state witness, Angela Miller, who was recalled to the stand, responded over defense objection to improper rebuttal questions. The following exchange forms the basis of the defendant's argument.
EXAMINATION BY MR. DUBELIER:
Q. Ma'am, would you tell us your full name again, please.
A. Angele Marie Margaret Miller
Q. Ma'am, I'll ask you again: do you know the defendant Thomas Deboue?
A. Yes, I do.
Q. And how long have you known him for?
A. For over five or six years.
Q. Has he limped on the right side for the entire time you've known him?
A. No.
Q. Approximately how long has he had that condition?
A. He's been that way for just about two and a half years.
Q. During the time you've known him, has there ever been any occasion where he goes without his cane?
BY MR. WILLIAMS:
Objection, your Honor. May I approach the bench?
(All attorneys go into chambers for a conference with the Court.
BY THE COURT:
Objection, Mr. Williams?
BY MR. WILLIAMS:
Yes, your Honor, I would object to this line of questioning for the reasons stated in chambers.
BY THE COURT:
Which is?
BY MR. WILLIAMS:
That's it's outside of rebuttal because I have not put on any affirmative case to indicate the subject matter that the district attorney is going into.
BY THE COURT:
Overruled.
BY MR. WILLIAMS:
Thank you, your Honor. Not my objection for the record.
R.S. 15:282 allows the prosecution to rebut evidence adduced by the defendant. Rebuttal evidence is offered to explain, repel or disprove facts given in *407 evidence by the adverse party. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed; Trosclair v. Louisiana, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984). State v. Jackson, 482 So.2d 807 (La.App. 4th Cir.1986). Such evidence may be used to strengthen the state's original case. State v. Huizar, 414 So.2d 741 (La.1982). The determination of whether evidence is rebuttal evidence and, therefore, admissible is an issue which is left to the sound discretion of the trial judge. State v. Huizar, supra; State v. Jackson, supra.
In this case there was evidence presented by a neighbor of the victim to show that one of the men leaving the scene was limping. The defendant, on cross-examination admitted that his brother was crippled and sometimes used a cane. Because the main thrust of the defense was that two other men committed the crime just before they arrived, evidence involving identification and timing are important to both sides. There does not appear to be an abuse of the trial court's discretion in allowing this testimony.
* * * * * *
The second part of this argument concerns remarks made by the prosecutor in closing argument which the defendant alleges were prejudicial. Those remarks can be summarized as follows:
1. Everybody tried to find out what Lorraine Morgan told the police, but she was smart, she wouldn't tell them what she told the police.
2. Six years old and she knew she was going to die.
3. Jamal Moore laid there in that bathtub, hanging on to that policewoman, he knew he was going to die. Eleven years old. He knew he was going to die.
4. Find them guilty as charged. Find him (pointing to one of the defendants) guilty as charged with two counts of first degree murder. Find him (pointing to the other defendant) guilty as charged with two counts of first degree murder. And then give me the chance to come back here and tell you why the death penalty is the appropriate penalty. I'll do that for you all. I promise you I'll do that.
After the last argument there was loud applause from the spectators. The trial judge demanded silence and quickly restored order. A request for a mistrial made at this point by the defendant was denied. However, the trial judge gave the following admonition:
The jury is admonished, at the request of defense, and I agree with their request, and that's why I'm doing it, to admonish any outbreaks during the course of the trial, more particularly, at the end of the argument given by the state, by any of the spectators who may have been in court.
C.Cr.P. art. 774 provides that the scope of closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case."
Arguments which go beyond the scope of Article 774 fall within the ambit of C.Cr.P. art. 770 or 771 State v. Morris, 404 So.2d 1186 (La.1981). These arguments will only require a reversal if the court is thoroughly convinced that the jury was influenced by the remarks and that such contributed to the verdict. State v. Glenn Ford, 489 So.2d 1250 (La.1986); State v. Jarman, 445 So.2d 1184 (La.1984); State v. Robertson, 480 So.2d 410 (La.App. 4th Cir.1985).
The first comment regarding Lorraine Morgan was a fair conclusion based on her testimony at trial that instead of going to her mother's house she went to the district attorney's office and that she no longer visits with her mother or her sisters. Thus, this argument is within the scope of Article 774.
The second and third arguments are within the proper scope of closing argument. While the prosecutor must base his conclusions and deductions upon evidence adduced at trial as prescribed by C.Cr.P. art. 774, both sides may draw their own *408 conclusions as to what the evidence established and may convey to the jury any view arising out of the evidence presented. State v. Moore, 432 So.2d 209 (La.1983). cert den. Moore v. Louisiana, 464 U.S. 986, 104 S.Ct. 435 78 L.Ed.2d 367 (1983). Testimony at trial by the medical examiner that both children's throat's were slit in a manner which would cause them to die within approximately thirty minutes, coupled with the investigating officers testimony that Jamal was still breathing when they arrived bring the statements by the prosecutor within the bounds of permissible argument. State v. Moore, supra.
The defendant alleges that by the last statement the prosecutor raised the penalty issue during the guilt phase of the trial, thereby appealing to the prejudice of the jury and inferring that he had information, not yet introduced into evidence which would warrant the death penalty. The defendant contends that because this comment goes beyond the evidence adduced at trial, it constitutes reversible error.
The comment seems to be an expression of the prosecutor's opinion on the degree of culpability of the defendants rather than an inference that the prosecutor has other information not yet submitted to the jury. Even if the remarks goes beyond the scope of Article 774, it is considered harmless error, unless the remark clearly influenced the jury so that it contributed to the verdict. State v. Elzy, 451 So.2d 1167 (La.App. 4th Cir.1984).
While it is true that the prosecutor's remark envoked applause from the spectators in the courtroom the admonishment by the judge was sufficient to cure any prejudice. State v. Franklin, 449 So.2d 63 (La.App. 4th Cir.1984). This assignment is without merit.

Number Sixteen
The defendant alleges that the trial court erred in refusing to give special requested jury charges numbers three, five, seven and eight.
Charge number 3 dealt with circumstantial evidence;
Charge number 5 dealt with direct and circumstantial evidence;
Charge number 7 dealt with testimony regarding prior convictions;
Charge number 8 dealt with statements.
The court must charge the jury as to the applicable to the case. C.Cr.P. art. 802(1). In all cases, the court shall charge the jury that a person is presumed innocent until proven guilty of every element of the crime beyond a reasonable doubt. C.Cr.P. art. 804. A defendant may request special charges to the jury. These charges must be given by the court if the charges do not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. C.Cr.P. art. 807.
The trial judge in the instant case gave a lengthy charge to the jury. This charge included a full explanation of direct and circumstantial evidence and the effects of each which more than adequately covered the points set out in defendant's special charges three and five. The law on statements made by the defendant, which is the subject of defendant's special requested charge number eight, was fully explained to the jury by the trial judge.
Defendant's seventh requested jury charge regarding testimony of prior convictions is irrelevant to the facts of this case since no evidence of prior convictions was adduced at trial. In the charge to the jury, the trial judge gave a full and correct charge on the presumption of innocence and the necessity of proof beyond a reasonable doubt of every element of the crime. This assignment is without merit.

Number Seventeen
By this assignment of error, the defendant questions the sufficiency of evidence used to convict him of first degree murder. That crime is defined in R.S. 14:30 in part as follows:
A. First degree murder is the killing of a human being:

*409 (3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person;
The state offered testimony from the victims' neighbor, Alvin Hite, to show that Mr. Hite was awakened at about 12:20 a.m. on March 30, 1984 by noises in the next apartment. When he went out to investigate, Mr. Hite saw two black men, one limping, running out of the apartment and down the fire escape.
Officers Randy Varuso and Margaret Fairly both testified that upon arrival at the crime scene at 12:30 a.m., they found Nigquita lying on the bed. She had a large gash in her throat and both the child and the bed were covered with blood. Jamal was found in the bathtub. He was bleeding from wounds in his throat and hot water was running on his head. Niqquita was dead when the officers arrived. Jamal was transported to a hospital but was dead on arrival.
Officer Narcel Orazio testified that he found a bloody knife on the bathroom floor, a baseball cap behind the bathroom door, a bloody razor blade, and a walking cane outside in the courtyard. Officer Ken Solis, a fingerprint expert testified that the prints lifted from the door were those of the defendant, Edward Deboue.
The defendant's sister, Lorraine Morgan, testified that her mother called her at about 1:00 a.m. and told her to come and pick up Thomas. She testified that when she got to her mother's home, Thomas told her that he had killed two kids. She further testified that her brothers had been shooting dice and that when Edward lost all of his money the brothers decided to go to the Miller apartment because she was never home and always kept money there. The two brothers told Ms. Morgan that the kids were home. Ms. Morgan testified that Thomas told her that he killed the children because he "owed" Ms. Bettina. Thomas also told her that Edward held the boy. Mrs. Morgan along with another sister drove the two defendants to Biloxi where she purchased two bus tickets to New York for the defendants.
Officers Greg McGrail and Daniel Bergin of the New York-New Jersey Port Authority testified that they apprehended the defendants when they got off the bus. They were arrested and advised of their rights. Later, while they were held in detention, Officer McGrail asked the rhetorical question, "How can anyone kill their own kids." Thomas Deboue answered, "They weren't my kids."
There was testimony from several witnesses that Thomas was crippled and frequently used a walking cane. Angela Miller, the victims' aunt and sister testified that Edward almost always wore a baseball cap. She further testified that jewelry and money were missing from the apartment.
Edward Deboue testified that he and his brother left a nearby bar at about 12:15 a.m. and went to Ms. Bettina's apartment but when they arrived they found the children already injured. They were afraid of getting involved so they fled.
In assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, when circumstantial evidence is involved, R.S. 15:438 requires:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Using these standards there is sufficient evidence to convict the defendant of first degree murder. This assignment is without merit.
Accordingly, the defendant's convictions and sentences are hereby affirmed.
AFFIRMED.