CIACCIO, Judge.
Defendant, Benjamin Mackey, was charged with the second degree murder of Donna Jordan. A jury found him guilty as charged. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. He appeals his conviction and sentence relying on two assignments of error. We affirm.
On April 3, 1986 at approximately 2:30 p.m. motorists travelling on 1-10 in eastern New Orleans observed a young woman jump or fall from a 1977 yellow two door Buick Regal into the eastbound emergency lane of the highway. The vehicle's driver attempted to back over the woman. The woman ran across six lanes of the highway and was thereafter pursued, on foot, by the driver of the vehicle. When the two reached a grassy area between the westbound lanes of traffic and a closed highway exit the driver stabbed the woman numerous times with a short blade knife. Following the attack, the assailant ran back across the highway and fled in his car towards Slidell. The victim died at the scene and she was later identified as 16 year old Donna Jordan.
Various friends and relatives of the victim attested to the fact that she was seeing the defendant, a 40 year old man, on a social basis prior to this incident. She was also known to drive his 1977 yellow 2 door Buick Regal. Ms. Jordan had met the defendant at her uncle’s auto repair shop. The victim’s father objected to the relationship and had ordered the defendant to stay away from his daughter. There had been indications that Ms. Jordan had in fact broken off the relationship with the defendant on the morning before her murder. Her father saw her that morning as she sat outside their house and he ordered her to go to school. The defendant was also seen in the same area a few minutes thereafter.
Several highway commuters witnessed the crime as they travelled along the interstate highway.
Douglas Dichiara who was travelling along the interstate in a vehicle driven by his father observed a yellow Buick parked by the roadside. He saw the victim fall from the car to the ground and he observed the vehicle’s driver attempt to back over the victim. The victim was thereafter chased, on foot, by the driver, across several lanes of traffic. Dichiara and his father continued to Slidell. The next day, upon learning of the woman’s death, they telephoned the police. At a photographic lineup Douglas Dichiara chose a photo of the defendant as being that of a man who looked like the one who had chased Ms. Jordan.
Gloria Bourgeois was a driver in the westbound lane of the interstate at the time of this incident. She observed a woman run across the interstate and she was being followed by a man. Ms. Bourgeois had to nearly stop her vehicle in order to *217 avoid hitting the assailant with her car. She observed the victim slip and fall and she sought assistance on her citizen’s band radio. Ms. Bourgeois did not stop to render aid because she had her small grandchildren in the car. She did, however, drive to the Seventh District Police Station to report the incident. Several weeks later Ms. Bourgeois viewed a photographic lineup and she chose the defendant’s photograph as one having physical features similar to the perpetrator of this crime.
Two additional motorists also observed this crime. Barton Bankston and Mike Gabriel were driving to Slidell in a company van when they noticed what they thought was trash being thrown from a beige/yellow 1977 two door Buick or Oldsmobile sitting on the roadside. As they passed the bundle they recognized it as a woman’s body. They saw the vehicle attempt to back over the woman but she regained her footing and began to run across the highway with the driver of the vehicle in pursuit. They pursued the assailant in their vehicle and they observed the woman fall to the ground. Her assailant grabbed hold of her and dragged her into the grass where he stabbed her. Bankston and Gabriel blew the horn of their vehicle from a distance of about 20 feet away. The assailant stopped stabbing the woman, folded a small knife which he placed in his pocket and he ran back to his car and fled the scene. During the incident Bankston told Gabriel to write down the license number of the assailant’s car, which he did. They stopped a passing motorist and asked him to give the information to the police.
This pair of observers later each viewed a photographic lineup and chose the defendant’s photograph as depicting someone who looked somewhat like the perpetrator. At trial Bankston positively identified the defendant and Gabriel was 95% sure that he was the murderer.
The defendant could not be found after the murder. He was eventually arrested in California and extradited to Louisiana for trial.

Assignment of Error No. 1

In his first assignment of error the defendant contends that his in-court identification by Gloria Bourgeois, an eye witness to the crime, was tainted. He reasons that Ms. Bourgeois’s in-court identification occurred because the prosecutor showed her the defendant’s photograph prior to trial.
In State v. Moore, 300 So.2d 492 (La.1974) at 493-494, the Louisiana Supreme Court discussed the standard to be utilized in cases such as this:
Federal and state due process requirements mandate the reversal of criminal convictions based on in-court identifications which have no basis independent of impermissibly suggestive line-up or photographic identifications. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) and State v. Wallace, 285 So.2d 796 (La.1973). In the course of our review we must therefore resolve two issues: first, were the photographic identification procedures employed by the prosecution impermissibly suggestive and, second, even if there is such misconduct, does the record reveal that there existed an independent and untainted basis for the witness’ in-court identification?
In this case Ms. Bourgeois testified that she had been shown a series of photographs shortly after this incident and also on the morning of trial in the presence of defense counsel. She stated that she could not say whether the series was exactly the same on each instance of viewing, however, photograph # 3 depicted a person who was “closest to” what the witness “had seen.” She stated that the assailant had a similar widow’s peak, coloring and face shape as the person in this photograph but she could not make a positive identification. She thereafter requested that the defendant open a button on his shirt because the assailant’s shirt had been unbuttoned and according to Ms. Bourgeois he did not have a lot of hair. At trial, the defendant complied with the request and the following colloquy resulted:
Q. And how does it compare to what you’re see [sic] now?
S. Very much, very much, very much. Yeah, un-huh; that’s what I saw.
*218 These statements do not appear to constitute a positive identification of the defendant. As such, her viewing of the photographs before trial was immaterial.
Moreover, assuming for the sake of argument that Ms. Bourgeois’ statement at trial constitutes an identification of the defendant, it is clear from our review of the record that the identification was a direct result of seeing the defendant with his shirt unbuttoned and not from viewing the photographic series prior to trial. Accordingly, there exists an independent and untainted basis for the witness’ in-court identification and the evidence was properly admitted. This assignment lacks merit.

Assignment of Error No. 2

In his second assignment of error the defendant contends that the trial court erred in refusing to grant a mistrial based upon certain allegedly improper comments made by the prosecution in closing arguments.
The scope of closing arguments is defined by Louisiana Code of Criminal Procedure Article 774, as follows:
La.C.Cr.P. Art. 774. Argument; scope
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
During closing arguments the prosecutor stated that an eye witness to this incident, Mike Gabriel, testified that during the commission of the crime, he had observed the assailant’s license plate number and that his companion on that day, Barton Bankston, wrote it down and gave it to an anonymous caller who phoned it into the police. The prosecutor argued that the license number was “907B468.” At that instance, defense counsel lodged an objection on the basis that there was no testimony as to the license number the police received. The trial court judge sustained the objection and admonished the jurors that the arguments of counsel were not evidence but rather the prosecutor’s appreciation of the facts of the case. He further instructed the jurors to rely upon their memories when considering the case.
Thereafter, the prosecutor again made reference to the license plate number when she stated the following:
BY MS. COX
It’s not that startling, so that it should be discounted. It’s three numbers off. And the variables of the license plate number that Det. Gebbia got on the scene, between what Mr. Mackey’s license plate really was not—
Defense counsel again objected and moved for a mistrial.' The objection was sustained. The mistrial was denied and it now forms the basis for this assignment of error.
The trial judge may grant a mistrial when an improper comment is made by a prosecutor and an admonition regarding the comment is insufficient to assure the defendant a fair trial. La.C.Cr.P. Art. 771. See La.C.Cr.P. Arts. 770, 774.
A conviction will be reversed on this basis only when the reviewing court is satisfied that the trial judge abused his discretion and the improper argument influenced the jury and contributed to the verdict. State v. Sharp, 418 So.2d 1344 (La., 1982).
Our review of the record reveals that the evidence which the prosecutor referred to in closing argument, the license plate number of the car driven by the assailant, had not been elicited at trial. As such the statements made by the prosecutor in closing arguments did not refer to evidence admitted at trial and the defense objections to the statements were properly sustained by the trial court judge and an admonition given.
Additionally, we cannot say that, under the facts of this case, the trial judge abused in discretion in failing to grant a mistrial. That is, we are not convinced that the improper argument influenced the jury and contributed to the verdict.
Prior to the improper statement by the prosecutor the jury was unaware of the *219 similarity of the license number of the murderer’s car to that of the defendant’s. However, this fact alone would not have contributed to the verdict given the other evidence introduced by the State.
The record reveals significant evidence which would have linked this defendant to this crime. The defendant’s car was identical to that described as being at the scene of the crime. Although only one witness could positively identify this defendant as the murderer, other witnesses testified that he had physical characteristics similar to the murderer. Additionally, this defendant was dating the victim prior to her murder and he had been warned by her father to stay away from her. The victim was stabbed to death and the defendant was known to carry a pocket knife. He was seen near the deceased a few hours prior to the murder and was not seen in New Orleans following the murder. He was thereafter arrested in California.
There was ample evidence for the jury to conclude the defendant was guilty and it does not appear the improper comments of the prosecutor contributed to the verdict. The comments were, therefore, harmless error and the trial judge did not abuse his discretion in refusing to grant a mistrial as a result of them.
For these reasons this assignment lacks merit. The defendant’s conviction and sentence are affirmed.
AFFIRMED.