588 So.2d 771 (1991)
STATE of Louisiana
v.
Glenn HARRISON.
No. 90-KA-1040.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1991.
*772 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Elizabeth W. Cole, Supervising Atty., Gladstone Jones, Student Practitioner, New Orleans, for defendant-appellant.
Before KLEES, BYRNES and PLOTKIN, JJ.
KLEES, Judge.
Defendant Glenn Harrison appeals his conviction of aggravated burglary, armed robbery, aggravated rape and aggravated crime against nature. We affirm.
On September 28, 1989 the grand jury returned a true bill charging the defendant with violating La.R.S. 14:60 (aggravated *773 burglary), R.S. 14:64 (armed robbery), R.S. 14:42 (aggravated rape), and R.S. 14:89.1 (aggravated crime against nature). On March 21, 1990, following a two day trial, a twelve-person jury returned verdicts of guilty of unauthorized entry of an inhabited dwelling, a violation of R.S. 14:62.3; guilty of first degree robbery, a violation of R.S. 14:64.1; and guilty as charged of aggravated rape and aggravated crime against nature. Defendant was sentenced to serve five years at hard labor on the first count, fifteen years at hard labor on the second count, life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on the third count, and fifteen years at hard labor on the fourth count. The court ordered that the sentences on the first and second counts run consecutively and that the sentence on the fourth count run concurrently. The defendant timely moved for an appeal.
STATEMENT OF THE FACTS
On the evening of September 20, 1988, the victim was returning home from work at about 5:00 p.m. when she noticed a man talking with her neighbor. The victim went to her house and proceeded to put conditioner in her hair. She then left home on her bicycle to go to the store. Upon returning, the man she had previously seen outside, whom she later identified as the defendant, asked her for a drink of water. She went inside her apartment, put her bicycle up, and then went to the kitchen to get the water. When she turned around, the defendant was behind her. The defendant put his hands on her mouth and stuck something in her side. He then gagged her with a blouse, tied her hands behind her back with a nightgown, and pushed her on the bed. The defendant threatened to put her eyes out; at that point she saw that the defendant was holding a screwdriver. The defendant then removed her pants, forced her to perform oral sex, and vaginally raped her. After completing the rape, the defendant demanded money; the victim gave him $15.00 or $20.00. She was then forced by the defendant to go to the bathroom to douche herself. Afterward, the defendant threatened the victim and left.
The victim dressed and went to her boyfriend's apartment. Her boyfriend testified at trial that she had banged on the door of his apartment and that she was hysterical at the time. The boyfriend then called the police. The first officers to arrive were Gerald Smith and his partner. Officer Smith took the victim back to her apartment to look over the scene. She pointed out that a bank book on the floor did not belong to her.
Detective Robert Harrison and his partner Joe Dejoie from the Sex Crimes Unit were called to the scene. Detective Harrison testified that the victim was very upset and was continually crying. During the investigation, a passport was found in the apartment. Both the passport and the bank book had the defendant's name in them.
Detective Harrison then took the victim to Charity Hospital. While they were there, his partner brought a photo line-up for her to view. She made an immediate and positive identification of the defendant.
Dr. Jeff Patterson testified that he examined the victim at Charity Hospital. The doctor found no seminal fluid, abrasions or bruises on her. However, he noted that she was very fearful and anxious.
The defendant did not testify at trial. The only defense witness was the defendant's mother, whose testimony pertained to whether the police had tried to execute an arrest warrant for the defendant. Trial testimony from Detective Lido Schubert established that the defendant was arrested in California approximately one year after the crime.
The defendant's conviction, sentencing, and appeal followed.
ERRORS PATENT
A review of the record reveals that the trial court imposed illegally lenient sentences for counts two and four. The trial court failed to state that the sentences were to be served without the benefit of probation, parole, and suspension of sentence as required by R.S. 14:89.1 and R.S. 14:64.1. However, because the errors are *774 favorable to the appellant and the State has not raised the issue, they will not be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986).
A further review reveals that on the day of sentencing, the appellant filed a pro se motion in arrest of judgment, which was denied on that date. The record does not reflect whether the appellant waived his right to a twenty-four hour delay between the denial of this motion and his sentencing, as required by C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La. 1990), the Supreme Court held that the trial court's failure to observe the twenty-four hour delay did not constitute harmless error, even if the defendant did not raise that issue as error on appeal, where the defendant challenged his sentence on appeal. In the instant case, the defendant has not challenged his sentence and has not assigned as error the trial court's failure to observe the twenty-four hour delay. Thus, this error is harmless. State v. Albert Collins, 584 So.2d 356 (La.App. 4th Cir. 1991).
ASSIGNMENT OF ERROR NUMBER ONE
The appellant's first assignment pertains to the trial court's refusal to grant a mistrial because of allegedly prejudicial and improper remarks made by the prosecutor during his rebuttal argument.
The scope of closing argument is set forth in La.C.Cr.P. article 774, which provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Even if such remarks go beyond the scope of Article 774, the remarks are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict. State v. Jarman, 445 So.2d 1184 (La.1984); State v. Deboue, 496 So.2d 394 (La.App. 4th Cir. 1986) writ den. 501 So.2d 229 (1987); State v. Headley, 522 So.2d 1269 (La.App. 4th Cir.1988). See also State v. Mackey, 550 So.2d 215 (La.App. 4th Cir.1989).
The appellant first argues that the prosecutor improperly expressed his own personal beliefs as to the guilt of the defendant on two occasions. The first statement objected to was to the effect that the boyfriend believes the victim; Detective Harrison believes the victim; my office believes the victim. The defendant's objection to these remarks at trial was sustained by the court, which admonished the jury as follows: "The personal views of the prosecutor or the defense are not important; are not evidence. Just remember that."
The second remark objected to is:
I RESENT THE IMPLICATION THAT I WANT A "CHEAP CONVICTION." I DO NOT WANT AN INNOCENT MAN TO GO TO JAIL. I WANT A GUILTY RAPIST TO GO TO JAIL.
It was followed by this exchange:
BY MS. COLE:
YOUR HONOR, OBJECTION FOR THE SAME REASON THAT WAS PREVIOUSLY STATED; SAME MOTION IS BEING MADE.
BY MR. HESNI:
THAT WAS A PERSONAL ATTACK, YOUR HONOR, "A CHEAP CONVICTION."
BY THE COURT:
ALL RIGHT, PROCEED. LADIES AND GENTLEMEN, LET ME GIVE YOU A SMALL ADMONISHMENT AT THIS TIME. NOTHING THAT THE STATE SAYS AND NOTHING THAT THE DEFENSE SAYS IS EVIDENCE IN THE TRIAL TODAY. YOU WILL HEAR ME SAY THAT LATER IN THE CHARGE. EVIDENCE COMES FROM THAT WITNESS CHAIR AND WHAT'S INTRODUCED, THE FACTS AND THE PHYSICAL EVIDENCE, AND YOU APPLY IT TO THE LAW THAT I GIVE YOU. YOU'LL HEAR MORE *775 OF THAT. THIS IS MERELY THEIR POSITIONS IN THE CASE. REMEMBER THAT AND CONSIDER IT. YOU CAN TAKE IT; CONSIDER IT; YOU DON'T HAVE TO CONSIDER IT. THE ONLY THING YOU HAVE TO DO IS LISTEN TO IT. ALL RIGHT? LET'S PROCEED.
At the conclusion of the court's charge to the jury, defense counsel was allowed to perfect the record with the reasons for his motion for mistrial, which was made in connection with the remarks quoted above. The court denied the motion, emphasizing that in both instances it had admonished the jury.
Appellant contends that the denial of the motion was error. Appellant also argues by this assignment of error that the prosecutor acted improperly when he outlined the screening procedures used in rape cases, emphasizing the unpleasant events the victim had had to endure after reporting the rape. The prosecutor's implication was that since the case had proceeded to trial, the victim must be telling the truth. At this point, the court admonished the prosecutor to "stay on the facts".
We find that all the remarks objected to, even assuming that they were improper, were harmless. As the State argues in its brief, the principal issue in this case was the credibility of the victim. In the closing argument, defense counsel contended that the victim had made up the story of the rape to keep her boyfriend from finding out that she had had a consensual sexual encounter with the defendant. Many of the prosecutor's remarks were made to rebut this charge. Also, the prosecutor was, in at least one instance, clearly responding to an attack that he wanted "a cheap conviction." The admonishments given by the court were thorough, and emphasized that the personal views of the prosecutor were not evidence and that nothing either side says in arguments is evidence.
None of the remarks were of such a nature that they would have inflamed the jury or contributed to the verdict. We therefore find that the court did not err in denying the motion for mistrial.
ASSIGNMENT OF ERROR NUMBER TWO
The appellant's second contention is that the prosecutor went outside the scope of the evidence when he stated that the defendant had fled the jurisdiction and had to be brought back. Appellant argues that the trial court compounded the harm by saying that the jury would be charged on flight, then failing to give any such instruction.
La.C.Cr.P. art. 774 provides that the closing argument may include "conclusions of fact that the state or defendant may draw" from the evidence. The State introduced evidence that the police attempted to execute an arrest warrant on the defendant shortly after the incident and that the defendant's mother knew of the warrant. The State introduced additional testimony that the defendant was arrested in California a year after the offense. Obviously, from this evidence, the State sought to have a jury draw the conclusion that the defendant had known that there was a warrant for his arrest and that he had gone to California to avoid arrest. This evidence, and inference, would have helped to refute the defense of consent urged by the defendant. There is nothing improper in the State's rebuttal argument on this point. Moreover, the trial court admonished the jury that the comments of the prosecutor were not evidence.
The second assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE
By this assignment, the appellant contends that the prosecutor indirectly referred to a prior crime of the defendant when it introduced the photographs which had been used in the line-up shown to the victim. According to the appellant, the photograph of the defendant was a "mug shot" taken when he was arrested in a prior matter. The appellant further argues that the introduction of the photograph was unnecessary because the defense was willing to stipulate that the victim had identified the defendant.
*776 The basis for the appellant's argument is that the introduction of the photograph was an indirect reference to another crime. Appellant reaches this conclusion by contending that the photograph was a "mug shot", that it was shown to the victim shortly after the crime, that the defendant was not in custody, and that therefore the jury would infer that the photo had to have been taken when the defendant had been arrested on an unrelated matter.
The appellant's contentions are simply not supported by the record. The photograph was never referred to as a "mug shot," nor did the officer say from where he obtained the photograph. Although defendant's counsel offered to stipulate that the victim did make the identification of the defendant's picture, this offer came after Detective Harrison had substantially testified to the circumstances regarding the photo line-up. Therefore, the introduction of the picture itself was not any more prejudicial to the defendant, and the photograph was clearly probative.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER FOUR
In his fourth assignment of error, the appellant contends that the trial court erred when it failed to correct the prosecutor's misstatement of the definition of the "reasonable doubt". The alleged error occurred during the State's rebuttal argument. The prosecutor's entire remarks on reasonable doubt were:
Reasonable doubt. Ladies and gentlemen, reasonable doubt isn't all doubt. If someone were to come in here right now and say, "the world is round," we'd all believe him. If someone were to come in right now and say, "the world is flat," I don't believe any of you would entertain a reasonable doubt as to the world being flat. He is merely making allegations, innuendo, the defense, to deny guilt. Reasonable doubt? No, I don't think so. We put on evidence that was competent, believable, truthful, reliable, and they told the truth. If you don't have ... If you can sit in these chairs right now and say, "I am reasonably satisfied that he did it. That's it." It's not all doubt. It's not the shadow of any doubt.
BY MS. COLE:
Your Honor, again, I object. It's not correct they are reasonably satisfied. They must be satisfied beyond a reasonable doubt. I think that's a misstatement.
BY THE COURT:
They'll get charged with that, Ms. Cole. Let's not interrupt any more, Ms. Cole. All right?
In his brief, appellant argues that because the trial court did not immediately correct the prosecutor's erroneous statement, the jury was "left with an incorrect perception" of the reasonable doubt standard.
We disagree. As stated previously, the trial court admonished the jury more than once that they were free to disregard the comments made by counsel during argument. C.Cr.P. article 774 expressly provides that closing argument may include the law applicable to the case. There is nothing in the State's rebuttal argument which would indicate an intentional desire to mislead the jury on the law. Defense counsel promptly objected and stated her position on the meaning of the reasonable doubt standard; the court properly informed the jury that he would charge them on the law.
This assignment of error does not merit reversal of the defendant's convictions.
ASSIGNMENT OF ERROR NUMBER FIVE
After the appellant filed his original brief, the United States Supreme Court rendered its decision in Cage v. Louisiana, ___ U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), on remand 580 So.2d 662 (La. 1991), in which the court found that a jury instruction on reasonable doubt violated the United States Constitution by suggesting a higher degree of doubt than is required for acquittal under the reasonable doubt standard. Because of that decision, appellant moved to supplement the appeal *777 with an objection to the reasonable doubt portion of the jury charge. In a supplemental brief, the appellant argues that the jury charge given is unconstitutional under Cage.
In its brief, the State urges this Court not to consider this assignment of error on the grounds that the defendant failed to make a contemporaneous objection to the jury instruction.
C.Cr.P. Article 841 sets forth the contemporaneous objection rule in Louisiana: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." Article 801 provides for an additional requirement with regard to jury charges:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error.
In State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), this Court held that a contemporaneous objection was required to preserve an assignment of error as to a Cage jury instruction, rejecting the argument that the "plain error" doctrine should apply.
The transcript in this matter shows that no contemporaneous objection was made to the jury charge on reasonable doubt. However, before trial, the defendant filed a request to omit from the court's instruction to the jury any definition of reasonable doubt. The trial court denied the motion. It appears from the motion and transcript that counsel was objecting, on a prospective basis, to the court's standard jury charge on reasonable doubt, which charge the court eventually used. Under the circumstances, we find that the appellant has preserved this error for review.
The instruction on reasonable doubt which the trial court gave to the jury was:
If you entertain a reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn duty to give him the benefit of that doubt and return a verdict of not guilty.
But this doubt must be a reasonable one, that is, one founded upon a real, tangible and substantial basis and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your mind by reason of the unsatisfactory character of the evidence.
Likewise, if the State has proved the guilt of the defendant to your satisfaction beyond a reasonable doubt you should return a verdict of guilty.
Supp. Tr. 2-3
The instruction at issue in Cage was:
"If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty." State v. Cage, 554 So.2d 39, 41 (La.1989).
In analyzing this instruction, the United States Supreme Court emphasized three specific portions of the instruction: "grave uncertainty," "actual substantial doubt," and "moral certainty." The Court stated that:
It is plain to us that the words "substantial" and "grave", as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," *778 rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilty based on a degree of proof below that required by the Due Process Clause.
Cage, 111 S.Ct. at 329-330.
A comparison of the two jury instructions shows that in the instant case only one of the three offending phrases, "grave uncertainty," was used. The word "substantial" was also used in the jury instruction at issue here, but not in the phrase, "actual substantial doubt," which was emphasized in Cage. Therefore, the issue is whether a jury instruction which contains one-third of the objectionable language from Cage is violative of the Due Process Clause.
Louisiana courts have previously upheld jury instructions which contained part of the language emphasized in Cage. See State v. Taylor, 410 So.2d 224 (La.1982) and State v. Miller, 489 So.2d 268 (La.App. 4th Cir.), writ den. 496 So.2d 1030 (La. 1986) ("grave uncertainty," "moral certainty"); State v. Washington, 522 So.2d 628 (La.App. 4th Cir.1988) writ den, Bentley v. State, 523 So.2d 1321, cert. den., Bentley v. Louisiana, 488 U.S. 834, 109 S.Ct. 94, 102 L.Ed.2d 70 (1988), ("moral certainty"). See also State v. Holmes, 516 So.2d 184 (La.App. 4th Cir.1987) and cases cited therein.
In the instant case, the jury instruction is not the same as in Cage v. Louisiana, supra; it is not even substantially the same. The appellant has relied solely on the Cage decision for his argument. As we have noted, similar attempts to apply prior holdings to instructions which are not identical have uniformly been rejected. We conclude that this assignment of error is meritless.
Accordingly, for the reasons stated, defendant's convictions and sentences are affirmed.
AFFIRMED.