**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-30622

ALAN MUHLEISEN,

Petitioner-Appellant,

versus

RICHARD P. IEYOUB, Attorney General, State of Louisiana;
BURL CAIN, Warden, Louisiana State Penitentiary,

Respondents-Appellees.

Appeals from United States District Court
for the Eastern District of Louisiana

March 2, 1999

Before POLITZ, EMILIO M. GARZA, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge.

The opinion reported at Muhleisen v. Ieyoub, 163 F3d 319 (5th Cir. 1999) is withdrawn, and the opinion below is substituted in all respects for the withdrawn opinion.

Alan Muhleisen appeals the district court's decision to dismiss with prejudice his petition for a writ of habeas corpus. Muhleisen was convicted in Louisiana state court of one count of first degree murder on March 11, 1976. On appeal, Muhleisen contends that the jury instruction defining reasonable doubt given in his trial violated his constitutional rights under the Due Process Clause of the Fourteenth Amendment. We disagree, and AFFIRM the petitioner's conviction and sentence.

## FACTUAL & PROCEDURAL BACKGROUND

On January 29, 1997, Muhleisen filed a petition for writ of habeas corpus in the district court. Muhleisen had been convicted in Louisiana state court of murdering a seven-year-old girl after raping her. Testimony presented at Muhleisen's trial showed that he lived next door to the victim, Ingrid Kelly, who -- on the day of her murder -- had been playing with friends in front of her house. One of Ingrid's playmates had seen her ride her bike up the driveway between the Kelly and Muhleisen houses. When Ingrid's mother was unable to find her, she went to Muhleisen's house to inquire whether he had seen her. Muhleisen took a long time to respond to Mrs. Kelly's knock. When Kelly inquired whether Muhleisen had seen Ingrid, he replied, "Which one is she?" although Kelly had heard him call Ingrid by name two days before. Muhleisen said he had not seen Ingrid because he was taking a shower. Muhleisen was dressed in pants and a t-shirt with a bathrobe over his clothes and a dry shower cap on his head. A search for Ingrid ensued. During the search, one of the neighbors asked Muhleisen if he had seen Ingrid. This time, Muhleisen said that he had talked to Ingrid around 6:00 p.m. and that she had walked away when he told her that he was watching the news.

Several days later, Ingrid's body was found in a wooded area in Metairie. Her body had been stuffed in a green plastic garbage bag, her hands were tied behind her back with a piece of rope, and a black cloth was stuffed in her mouth. Another piece of black cloth was found underneath the body, along with a yellow paper towel. Kelly identified Ingrid's clothing, earrings, and hair barrette.

Experts testified that a piece of rope obtained from Muhleisen's place of employment was identical to the rope that bound Ingrid's hands. The black cloth was identical to that found in a rag bin at Muhleisen's job site. The yellow paper towel matched a roll of paper towels found in Muhleisen's house, and a package of green plastic trash bags similar to the one in which Ingrid's body

2

was found was located in his kitchen. The black tape on the end of the rope that had bound Ingrid's hands matched a roll of black tape obtained from Muhleisen's employer.

An autopsy of Ingrid's body revealed that Ingrid had been raped and strangled. Muhleisen was questioned by police and confessed to raping and murdering Ingrid. He described how he had gagged her and tied her hands with a piece of rope he had obtained from work. He stated that he had then choked her to death and had put her body in a green plastic garbage bag and then into a cardboard box in the "cat room." Muhleisen signed the confession in which he explained the crime.

Muhleisen pleaded not guilty and not guilty by reason of insanity. He did not object to the jury charge. The jury returned a verdict of guilty to the first degree murder charge. State v. Muhleisen, 340 So. 2d 572, 573 (La. 1976) Muhleisen was sentenced to death. Id.

Muhleisen's conviction was affirmed by the Louisiana Supreme Court on direct appeal, but his death sentence was vacated and remanded for imposition of the sentence of life imprisonment without eligibility for parole, probation, or suspension of sentence for a period of forty years. Id. His conviction became final on January 13, 1977. Muhleisen has filed two post-conviction petitions with the Louisiana Supreme Court. One, which was granted, was a motion to force the trial court to rule on his pending habeas petition. The second petition raised six arguments including those raised in Muhleisen's federal petition. The state court denied Muhleisen's habeas petition without opinion. Muhleisen v. Whitley, 664 So. 2d 418 (La. 1995). Muhleisen's motion for reconsideration was also summarily denied.

The instant case was referred to a magistrate judge who issued a report and recommendation that the petition be denied. The magistrate judge noted that the claims were likely barred by the statute of limitations but acknowledged that the law in this area was unsettled and, in "an abundance

3

of caution," the magistrate judge addressed the merits of Muhleisen's claims. The district court adopted the report over Muhleisen's objections, and the court entered a final judgment. Muhleisen filed a timely notice of appeal.

## DISCUSSION

### I

We limited appeal in this case to the following issues: (1) whether Muhleisen's claim was barred by the statute of limitations; (2) whether a claim brought under Cage v. Louisiana, 489 U.S. 39 (1990) may be raised retroactively in a habeas petition; (3) whether Muhleisen is procedurally barred from raising Cage claim because he failed to make a contemporaneous objection; and (4) whether the jury instructions given in Muhleisen's case violate Cage.

### A

Louisiana argues that under the terms of the Antiterrorism and Effective Death Penalty Act of 1996, petitioner is time barred from raising his habeas corpus claim. After the government filed its brief in this case, we decided United States v. Flores, 135 F.3d 1000 (5th Cir. 1998). In Flores, we addressed the application of the one-year limitations period for motions brought under 28 U.S.C. § 2255, a provision analogous to § 2254 under which this state habeas corpus claim is brought. See Flores, 135 F.3d at 1002-06. We held that prisoners whose convictions had become final before the April 24, 1996, effective date of the AEDPA "must be accorded a reasonable time after the . . . effective date within which to file petitions for collateral relief." Id. at 1004-05 (footnote omitted). We determined that "one year, commencing on April 24, 1996, presumptively constitutes a reasonable

4

time for those prisoners whose convictions had become final prior to the enactment of the AEDPA to file for relief." Id. at 1006 (footnote omitted).

We apply this rule to Muhleisen's habeas petition brought under § 2254. See id. at 1002 n.7. Muhleisen's conviction became final before the April 24, 1996, effective date of the AEDPA. Under Flores, Muhleisen had until late April 1997 to file for relief. His petition was filed January 29, 1997, and is thus not barred.

**B**

Louisiana also submits that if we were to give relief to the petitioner, we would be retroactively applying a constitutional rule not in effect at the time of petitioner's trial. In Humphrey, 138 F.3d at 553, we held that a Cage claim could be brought retroactively in a habeas petition. Muhleisen's Cage claim is therefore properly before us.

**C**

Louisiana next contends that Muhleisen is procedurally barred from receiving relief because he failed to object to the jury instructions during his trial in state court. If a state court decision rejecting a federal habeas petitioner's constitutional claim rests on an adequate and independent state procedural bar, this court may not review the merits of the federal claim absent a showing of cause and prejudice for the procedural default, or a showing that failure to review the claim would result in a complete miscarriage of justice. See Boyd v. Scott, 45 F.3d 876, 879-80 (5th Cir. 1994).

We believe Louisiana's use of the contemporary objection rule, as applied specifically to Cage claims, is constitutionally adequate. "An adequate rule is one that state courts strictly or regularly

follow, and one that is applied evenhandly to the vast majority of similar claims." See Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997) (citing Amos v. Scott, 61 F.3d 333, 339 (5th Cir. 1995)).  In State v. Taylor, 669 So.2d 364 (La. 1996), the Louisiana Supreme Court abandoned the previous rule of reviewing all errors, whether objected to or not, in capital cases, and replaced it with a rule limiting review to trial errors to which a contemporaneous objection was offered.  Then, in State v. Hart, 691 So.2d 651, 660 (La. 1997), the Louisiana Supreme Court followed Taylor and held that a failure to lodge a contemporaneous objection to a reasonable doubt  jury instruction barred its review of the defendant's Cage claim.  We believe this establishes the Louisiana's Supreme Court's consistent application of the contemporary objection rule.

However, we cannot help but notice that in State v. Quatrevingt, 670 So.2d 197, 210 (La. 1996), the Louisiana Supreme Court simply noted the defendant's failure to object and then proceeded directly to the merits of a Cage claim.  Quatrevingt was handed down the same day – indeed, written by the same justice – as was Taylor.  Given Quatrevingt's proximity to the Louisiana Supreme Court's decision in Taylor, we doubt Quatrevingt can be cited for the proposition that the Louisiana Supreme Court inconsistently follows its contemporaneous objection rule. For the sake of caution, however, we proceed in the alternative to the substance of Muhleisen's claim.

**II**

Muhleisen claims that the instruction given to the jury in his trial concerning the reasonable doubt standard was worded so as to lead a juror into believing a higher degree of doubt was required for acquittal than was actually necessary.  The charge regarding reasonable doubt given to the jury in Muhleisen's case was as follows:

6

Now, if you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty under your solemn oath as a juror to give him the benefit of that doubt. Now, even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused.

This doubt must be a reasonable one. That is, one founded upon real, tangible, substantial basis and not upon caprice, fancy or conjecture. It must be such a doubt as would give rise to a <u>grave uncertainty</u> raised in your mind by reason of the unsatisfactory character of the evidence. If after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory on any single point indispensably necessary to constitute his guilty, it is your duty to give him the benefit of that doubt and return a verdict of acquittal.

A reasonable doubt, member of the jury, is not a mere possible doubt. It should be an <u>actual or substantial</u> doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt, <u>one for which you could give good reason</u>.

Now, you are prohibited by your oath of going beyond the evidence to seek for doubt for which to acquit. But you must confine yourselves strictly to a dispassionate consideration of the testimony as you heard it on the trial. You must not resort to extraneous facts and circumstances in reaching your verdict. That is, you must not go beyond the evidence to find facts or circumstances creating doubts but must restrict yourselves to the evidence that you heard on the trial of the case.

There are three phrases in this instruction, each emphasized above, which are problematic from a Due Process perspective. The most important is what in prior decisions we have described as an "articulation requirement," i.e. the description that a reasonable doubt is one for which you could give good reason. <u>See Humphrey v. Cain</u>, 120 F.3d 526, 531 (5th Cir. 1997), <u>reasoning adopted in Humphrey v. Cain</u>, 138 F.3d 552 (5th Cir. 1998)(<u>en banc</u>), <u>cert. denied</u>, No. 98-55, 1998 WL 396303 (Oct. 13, 1998). The others troublesome phrases are the descriptions "grave uncertainty" and "actual or substantial doubt." <u>See Cage v. Louisiana</u>, 498 U.S. 39, 40 (1990).

Muhleisen filed his petition for a writ of habeas coprus after Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). That statute alters the standards and scope of our review in habeas corpus petitions filed after AEDPA's effective date. <u>See Nobles</u>

7

v. Johnson, 127 F.3d 409, 415 (5th Cir. 1997) (applying AEDPA standards to a habeas petition filed after AEDPA's effective date of April 24, 1996). Applying these statutory amendments to 28 U.S.C. § 2254(d)(1) , we can grant a writ of habeas corpus only if the state court's determination of law, on a de novo review, violated Supreme Court precedent in existence at the time of the petitioner's conviction. See Drinkard v. Johnson, 97 F.3d 751, 768 (5th Cir. 1996), overruled on other grounds, Lindh v. Murphy, 521 U.S. 320 (1997).

We cannot say that this has occurred. The Supreme Court handed down Cage v. Louisiana, 498 U.S. 39 (1990), upon which petitioner relies, a little over thirteen years after petitioner's conviction became final.[1] That was the first, and so far the only, time the Supreme Court has held a definition of reasonable doubt to have violated the Due Process Clause. See Victor v. Nebraska, 511 U.S. 1, 5 (1994). We are therefore bound by AEDPA to deny Muhleisen's petition for a writ of habeas corpus.[2]

---

[1]Muhleisen also relies upon State v. Harrison, 609 So.2d 789 (La. 1992), in which the Louisiana Supreme Court held that a jury instruction containing the phrase "grave uncertainty" violated Cage. See id. at 790; see also State v. Harrison, 588 So.2d 771, 777 (La. Ct. App. 1991) (quoting instruction), rev'd, 609 So.2d 789 (La. 1992). We are bound by AEDPA to consider only U.S. Supreme Court rulings, however. See Humphrey, 138 F.3d at 553.

[2]It is possible that we should consider Cage as retroactively applicable to Muhleisen's petition. We have recently held that Cage is retroactively applicable under the second exception of the Teague doctrine. See Humphrey, 138 F.3d at 553. If AEDPA codifies the Teague doctrine, see, e.g., Fern v. Gramley, 99 F.3d 255, 260 (7th Cir. 1996)(noting that AEDPA "extends" the principle of Teague), that statute could also be read to codify the two exceptions to Teague as well. In the event the Supreme Court decides AEDPA incorporates the Teague exceptions, we also consider Muhleisen's petition in the light of Cage.
    We hold in the alternative that the jury instruction given at Muhleisen's trial is not contrary to the Court's decision in Cage. The Cage Court struck down a Louisiana jury instruction on reasonable doubt because it "equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt' and stated that what was required was a 'moral certainty' that the defendant was

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's decision and deny Muhleisen's

petition for a writ of habeas corpus.

---

guilty." Id. at 41.  Here, we only have "grave uncertainty" and "actual or substantial doubt"; the Muhleisen jury instruction does not also comment on the need for a "moral certainty" as did the Cage instruction.  Id. at 40. We think this distinction is important as the Court wrote that the first two phrases only "suggest" a higher degree of doubt is being called for than is actually necessary. Id. at 41.  The Court emphasized that "[w]hen those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear" that a constitutional violation has occurred. Id.(emphasis added).  The lack of "moral certainty" in the Muhleisen instruction bars us from ruling, under the strict standards of AEDPA, in his favor.

In making this decision, we cannot consider the "articulation requirement" in the Muhleisen instruction to be problematic as the Supreme Court has never expressed disfavor with such language. AEDPA only allows us to apply Supreme Court rulings, not our own rulings which take issue with this phrase.  See Humphrey, 138 F.3d at 553.

9