IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-30340

---

THOMAS J. WILLIAMS,

Petitioner-Appellant,

versus

BURL CAIN, Warden, Louisiana State Penitentiary,

Respondent-Appellee.

---

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

---

October 17, 2000

Before GARWOOD, DeMOSS, and PARKER, Circuit Judges.

GARWOOD, Circuit Judge:

In 1981, petitioner-appellant Thomas J. Williams (Williams), a Louisiana state prisoner, was convicted by a jury of first degree murder and sentenced to death. He was later resentenced to life imprisonment. Williams filed a state habeas corpus application, alleging, *inter alia*, that the reasonable doubt instruction given to the jury at his trial was constitutionally defective. On October 23, 1991, the state trial court denied Williams's application for habeas relief, and on July 17, 1994, the Louisiana Supreme Court denied Williams's request for supervisory and/or remedial writs. On April 22, 1997, Williams filed the instant

federal petition for habeas relief under 28 U.S.C. § 2254; in his petition, he brought claims similar to those in his state habeas application. On March 9, 1999, the district court denied his petition and dismissed his claims with prejudice. The district court then denied Williams's request for a certificate of appealability (COA). Williams sought a COA from this Court, which granted his request in part, limited to the question of the constitutionality of the reasonable doubt instruction. We now affirm.

## Facts and Proceedings Below

On January 16, 1981, Williams entered a neighborhood bar near his home in New Orleans. He shot and killed one person, injured another with a gunshot to the arm, and fired errant shots at other bar patrons. In June, 1981, Williams was convicted of first degree murder and later sentenced to death. He made a direct appeal to the Louisiana Supreme Court, which affirmed his conviction but remanded for an evidentiary hearing regarding whether he had received ineffective assistance of counsel during the sentencing phase of his trial. *See State v. Williams*, 480 So.2d 721 (La. 1985). At the hearing, the trial court determined that while Williams had received effective assistance of counsel during the sentencing phase, he and his counsel had been misinformed by the District Attorney's Office regarding the nature of his criminal record. The District Attorney's records incorrectly overstated the

2

seriousness of Williams's prior convictions, a factor which had led Williams not to testify during the sentencing phase (Williams did not testify or present any evidence at the guilt/innocence stage). The trial court ordered a new sentencing hearing and Williams was resentenced to life imprisonment. He is currently serving that sentence at the Louisiana State Penitentiary in Angola, Louisiana.

Williams later filed an application for state habeas relief. In the application, he argued that the reasonable doubt instruction given to the jury at his 1981 trial was constitutionally defective under *Cage v. Louisiana*, 111 S.Ct. 328 (1990) (*per curiam*), *overruled on other grounds by Estelle v. McGuire*, 112 S.Ct. 475, 482 n.4 (1991). Williams also argued that the specific intent instruction violated due process, and that he received ineffective assistance by his counsel's failing to object to the jury instructions and not allowing him to testify. Concluding that any error in the instruction was harmless, the state trial court denied the application on October 23, 1991. The Louisiana Supreme Court denied, without opinion or statement of reasons, Williams's request for supervisory or remedial writs on June 17, 1994.

On April 22, 1997, Williams filed the instant petition for post-conviction relief pursuant to 28 U.S.C. § 2254. In his petition, Williams again contended that the trial court's reasonable doubt instruction was constitutionally defective; he also argued that the specific intent instruction violated due

3

process and that his counsel provided ineffective assistance by not allowing him to testify on his own behalf at the guilt phase regarding his level of intoxication at the time he committed the offense. On March 8, 1999, the district court denied the petition. Regarding the reasonable doubt instruction, the district court found that because Williams filed his petition after the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), he could not "overcome the formidable barriers set up by AEDPA" and therefore the district court could not consider the merits of his claim. The district court did not specify which barriers precluded Williams from prevailing, and dismissed his claims with prejudice. Williams filed a notice of appeal and moved for a COA, which the district court denied. Williams then sought a COA from this Court. This Court granted his request in part, limited to the question of whether the reasonable doubt instruction was constitutionally defective, but declined to issue a COA on any other issue.

## Discussion

At the close of the guilt phase of Williams's 1981 trial, the trial court gave the following instruction to the jury:

> "The defendant is presumed to be innocent until he is proved guilty beyond a reasonable doubt. The consequence of this rule of law is, he is not required to prove his innocence, but may rest upon the presumption in his favor until it is overcome by positive affirmative proof. The onus, therefore, is on the State to establish to your satisfaction, and beyond a reasonable doubt, the guilt of the accused, as to the crime charged or any lesser one included in it.

4

If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your own sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one, that is, one found upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture. It must be such a doubt that would give rise to a *grave uncertainty*, raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not *an abiding conviction to a moral certainty* of the defendant's guilt. If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.

A reasonable doubt is not a mere possible doubt. It should be an *actual or substantial doubt.* It is such a doubt as a reasonable person would seriously entertain. It is *a serious doubt for which you could give a good reason*." (emphasis added).

No objection was made to this instruction, nor was it complained of on direct appeal.

Williams contends that the trial court's use of the phrases "grave uncertainty," "moral certainty," and "actual or substantial doubt," as well as its requirement that the jury have a "serious doubt for which you could give a good reason," rendered the instruction constitutionally defective under *Cage v. Louisiana* and *Victor v. Nebraska*, 114 S.Ct. 1239 (1994). Williams's appeal returns this Court to increasingly familiar yet persistently thorny terrain: post-AEDPA habeas challenges to alleged *Cage-Victor* errors in convictions that became final before *Cage* and *Victor* appeared.

5

Despite somewhat conflicting suggestions in our precedent, we conclude that our opinion in *Mulheisen v. Ieyoub*, 168 F.3d 840 (5th Cir.), *cert. denied*, 120 S.Ct. 81 (1999), controls this case and compels our conclusion that under AEDPA Williams cannot avail himself on habeas of *Cage* and its progeny. Accordingly, we affirm.

I.  Background: *Cage-Victor* Error and Retroactivity

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 90 S.Ct. 1068, 1073 (1970); *see also Jackson v. Virginia*, 99 S.Ct. 2781, 2786 (1979). In *Cage*, a direct appeal, the Supreme Court held that a reasonable doubt instruction ran afoul of *Winship* and violated the Due Process Clause because, when read "as a whole," it "equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty." *See Cage*, 111 S.Ct. at 329.[1]  The Court

---

[1]  The instruction in *Cage* read in relevant part:

"If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty . . . . *It must be such doubt as would give rise to a grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty*." *Cage*, 111 S.Ct. at 329 (emphasis in original).

found that the combination of these terms, given their common meaning, resulted in an instruction pursuant to which a reasonable juror could find guilt based on a lesser degree of proof than required by the Due Process Clause. *See id.* at 330.[2]

The Supreme Court subsequently refined *Cage* but left its holding essentially intact. In *Estelle v. McGuire*, the Court clarified that the standard for reviewing jury instructions in challenges to state criminal convictions was not whether an instruction could have been applied in an unconstitutional manner, as the *Cage* Court stated, but whether there is a "reasonable likelihood" that a jury in fact applied the challenged instruction unconstitutionally. *See McGuire*, 112 S.Ct. at 482 & n.4 (citations omitted). In *Victor v. Nebraska*, 114 S.Ct. 1239 (1994), the Court upheld, in one case on direct appeal and in another on appeal from denial of state habeas relief, two other reasonable doubt instructions that contained some (but not all) of the three suspect phrases in *Cage*. *Victor*, 114 S.Ct. at 1242. The Court reasoned that the phrases "moral certainty" and "substantial doubt" did not impermissibly lower the government's burden of proof because the context of the instructions clarified the meaning of the terms as being congruent with reasonable doubt. *See id.* at 1248, 1249-1251.

---

[2]On remand from the United States Supreme Court, the Louisiana Supreme Court found that the instructional error was harmless, and affirmed Cage's conviction and sentence. *State v. Cage*, 583 So.2d 1125 (La.), *cert. denied*, 112 S.Ct. 211 (October 7, 1991).

As noted above, Williams was convicted in 1981 and the Louisiana Supreme Court affirmed his conviction in 1985, five years before *Cage* was issued. The state contends that in light of AEDPA, Williams cannot benefit from the "new rule" of constitutional law announced by *Cage* and later cases. The threshold question, therefore, is whether Williams may now avail himself of *Cage* and *Victor*, which were both announced well after his conviction became final. *See Caspari v. Bohlen*, 114 S.Ct. 948, 953 (1994) (noting that if the state argues that a habeas petitioner seeks the benefit of a new rule, the habeas court must resolve the issue of retroactivity before considering the merits of the claim) (citation omitted).

"It is undisputed that *Cage* announced a new rule of constitutional law." *In re Smith*, 142 F.3d 832, 835 (5th Cir. 1998). In general, a "new rule" will not apply retroactively to the habeas petition of a prisoner whose conviction became final before the Supreme Court announced the rule. *See Teague v. Lane*, 109 S.Ct. 1061, 1073 (1989). There are two exceptions to *Teague*'s general non-retroactivity principle, however: the first is irrelevant here, but the second provides that a new rule may be applied retroactively if the rule "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *See id.* (citation and internal quotation marks omitted).

This Court has held that *Cage-Victor* error falls within the

8

second *Teague* exception and therefore applies retroactively on collateral review. *See Humphrey v. Cain*, 138 F.3d 552, 553 (5th Cir. 1998) (*en banc*) [hereinafter *Humphrey II*], *adopting reasoning of Humphrey v. Cain*, 120 F.3d 526, 529 (5th Cir. 1997) [hereinafter *Humphrey I*]. The *Humphrey I* panel based this conclusion on the Supreme Court's opinion in *Sullivan v. Louisiana*, 113 S.Ct. 2078, 2082-83 (1993), which held on direct appeal that *Cage-Victor* error was a "structural defect" and therefore not subject to harmless error analysis. *See Humphrey I*, 120 F.3d at 529. Because *Sullivan* found that conviction based on a constitutionally defective reasonable doubt instruction takes away a basic protection "without which a criminal trial cannot reliably serve its function," *Humphrey I* held that the second *Teague* exception applied to *Cage-Victor* error. *See id.* (citations omitted). However, both *Humphrey* opinions were careful to point out that they did not consider what effect, if any, AEDPA might have on the continued retroactivity of the *Cage-Victor* rule. *See Humphrey II*, 138 F.3d at 553 n.1; *Humphrey I*, 120 F.3d at 529.[3] The *Humphrey I* panel noted that a finding that *Cage* and *Victor* apply retroactively on collateral review might not have a very significant impact in a post-AEDPA regime because AEDPA's "new

---

[3]  The Second, Fourth, and Eleventh Circuits have also held, in pre-AEDPA cases, that *Cage* and *Victor* apply retroactively on habeas review. *See Gaines v. Kelly*, 202 F.3d 598, 605 (2d Cir. 2000) (citing *Humphrey II* with approval); *Adams v. Aiken*, 41 F.3d 175, 179 (4th Cir. 1994), *cert. denied*, 115 S.Ct. 2281 (1995); *Nutter v. White*, 39 F.3d 1154, 1157-58 (11th Cir. 1994).

9

barriers," such as the one-year statute of limitations, restrictions on successive petitions, and heightened standard of review under section 2254(d)(1), might "shut out future petitioners in Humphrey's situation." *See Humphrey I*, 120 F.3d at 529. It added that "[o[f course, we do not have occasion to measure how high those barriers might be." *Id.*

As noted above, in denying Williams's petition, the district court relied upon the fact that Williams was subject to AEDPA to support its conclusion that he could not benefit from *Humphrey* because he could not overcome unspecified "barriers" of AEDPA.[4] We conclude that based on *Muhleisen*, the district court's ultimate conclusion–that AEDPA precludes Williams from availing himself on habeas of the rule announced by *Cage* and later cases–is correct.

II. The Effect of AEDPA on Williams's Petition

Williams's petition, filed on April 22, 1997, is governed by AEDPA, which significantly restricts the availability of habeas relief to state prisoners. AEDPA amended section 2254(d) to provide in relevant part:

---

[4] We observe that two of the major hurdles created by AEDPA are not relevant to Williams. Williams filed his § 2254 petition within one year of April 24, 1996, and therefore his petition is timely. *See Flanagan v. Johnson*, 154 F.3d 196, 200 & n.2 (5th Cir. 1998). The present petition is his first, so he does not face the significant impediments to filing a second or successive petition. *See* 28 U.S.C. § 2244(b). Our finding that AEDPA blocks Williams's petition is therefore based on the third major hurdle of the statute, the heightened standard of review in § 2254(d)(1). The district court implicitly made the same finding.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

Subsection (d)(2), as amended, applies to the state court's factual determinations, while (d)(1) applies to questions of law and mixed questions of law and fact.  *See Lockhart v. Johnson*, 104 F.3d 54, 56-57 (5th Cir. 1997).  The district court based its ruling on the availability of *Cage-Victor* error to Williams's petition, which is purely a question of law; accordingly, subsection (d)(1) guides our analysis.   The operative effect of subsection (d)(1) is that a district court may only grant habeas relief if the constitutional "new rule" relied upon by the petitioner was either clearly established by the Supreme Court at the time his state conviction became final, or if the Supreme Court has held that this "new rule" is retroactive on habeas.  *Muhleisen* at 844.   Because Williams cannot satisfy either of these criteria, we must affirm the district court's denial of his petition.

This Court's holding in *Muhleisen* affirmed the denial of a post-AEDPA habeas petition invoking the *Cage-Victor* rule to

11

challenge a conviction that became final before *Cage* and *Victor* had been announced. Applying section 2254(d)(1), the *Muhleisen* Court stated that "we can grant a writ of habeas corpus only if the state court's determination of law, on a de novo review, violated Supreme Court precedent in existence at the time of the petitioner's conviction." *Muhleisen*, 168 F.3d at 844 (citation omitted). Because the Supreme Court handed down *Cage* thirteen years after the petitioner's conviction became final on direct appeal, the Court was "bound by AEDPA to deny Muhleisen's petition." In *Muhleisen*, as here, the petitioner raised his *Cage* claim in a post-conviction petition before the Louisiana Supreme Court, which in 1995, after both *Cage* and *Sullivan*, denied writs without opinion. *Muhleisen* at 842. *See Muhleisen v. Whitley*, 664 So.2d 418 (La. 1995). *Id.* Similarly, Williams's conviction became final long before *Cage*, although the Louisiana Supreme Court did not deny post-conviction writs until after both *Cage* and *Sullivan,* and under *Muhleisen* we must deny his petition as well.

In *Muhleisen*, we acknowledged *Humphrey II*'s holding that *in pre-AEDPA cases Cage* and *Victor* applied retroactively on habeas, but concluded that we were "bound by AEDPA" to dismiss the petition. The clear import of *Muhleisen* is that a lower federal court's holding that *Cage* and *Victor* apply retroactively is insufficient to make them retroactive under AEDPA. It therefore seems plain to us that under *Muhleisen* in order for a "new rule" to

12

be available under AEDPA to section 2254 petitioners, the Supreme Court itself must have held that the rule is retroactive. It has not done so with respect to *Cage* errors. *Muhleisen; Smith*, 142 F.3d at 835-36.[5]

Nothing in the Supreme Court's recent decision in *Williams v. Taylor*, 120 S.Ct. 1495 (2000), is contrary to this rule of *Muhleisen.* In *Williams*, Justice Stevens delivered the opinion of the Court with respect to parts I, III and IV; Justice O'Connor delivered the opinion of the Court with respect to part II (except for a here immaterial footnote in which Justice Scalia did not join) and part V. *Williams* was not concerned with whether or when under AEDPA § 2254(d) what would be "new" rules under *Teague* would be deemed to come within one of the *Teague* exceptions so as to be applicable retroactively. The presently relevant portion of *Williams* is its part II. Justice O'Connor's opinion for the Court, and Justice Stevens' separate part II opinion (in which Justices Souter, Ginsburg and Breyer joined), each plainly reflect the common sense proposition that AEDPA's section 2254(d) does not work

---

[5]In a footnote at the end of the *Muhleisen* opinion, we stated "we hold in the alternative that the jury instruction given at Muhleisen's trial is not contrary to the Court's decision in *Cage*." *Muhleisen* at 845 n.2. This alternative footnote holding does not deprive *Muhleisen's* basic holding–that AEDPA barred relief because the conviction had become final on direct appeal before *Cage* was handed down and there was then no Supreme Court holding that the instruction was constitutionally erroneous–of its binding precendential force. *See, e.g., Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir. 1991) ("This circuit follows the rule that alternative holdings are binding precedent . . . .").

13

any *expansion* of the availability to state prisoners of federal habeas relief. Both Justices recognized that it worked a *curtailment* of habeas availability, though in Justice O'Connor's view a greater curtailment than in Justice Stevens's view. Justice Stevens states that "AEDPA codifies *Teague* to the extent that *Teague* requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the *state conviction* became final." *Id.* at 1506 (emphasis added). Justice Stevens goes on to acknowledge that "AEDPA has added . . . a clause limiting the area of relevant law to that 'determined by the Supreme Court of the United States'. 28 U.S.C. § 2254(d)(1) . . . If this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Id.* at 1506-07. Justice O'Connor likewise concludes that "§ 2254(d)(1) places a *new constraint* on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus . . ." *Id*. at 1523 (emphasis added). She observes that "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . . refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant

14

state-court decision". *Id*.[6] Of most relevance to present case, Justice O'Connor goes on to state "the 'clearly established Federal law' phrase [in section 2254(d)(1)] bears only a slight connection to our *Teague* jurisprudence" in that "§ 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence." *Id.* The phrase "*Teague* jurisprudence" would facially seem to include the question of whether a new rule comes within a *Teague* exception so as to be retroactively applicable.

Certainly nothing in *Williams* casts doubt on *Muhleisen*. Indeed, if anything the emphasis in Justice O'Connor's opinion for the *Williams* Court that habeas relief can only be based on *Supreme Court* jurisprudence as reflected in Supreme *Court holdings*, not dicta, only serves to strengthen *Muhleisen*.

Regardless of the precise contours of post-AEDPA habeas retroactivity, *Muhleisen* controls and mandates the dismissal of Williams's petition. As of the present time, the Supreme Court has not held (or even stated in dicta) that the *Cage-Victor* rule applies retroactively on collateral review, and thus Williams cannot benefit from that rule under the second *Teague* exception, as

---

[6]The phrase "the time of the relevant state-court decision" as used here obviously refers to the time of the state conviction being attacked (or when it became final on direct appeal) and *not* to the time of the state court decision denying collateral relief from that conviction, else AEDPA § 2254(d) would almost completely eviscerate the previous law of non-retroactivity and would vastly expand, rather add a new constraint on, the power of the federal courts to grant habeas relief to state prisoners.

15

he could have done pre-AEDPA under *Humphrey II*.  *See Muhleisen*, 168

F.3d at 844.[7]

III.   Williams's *Cage-Victor* Claim

---

[7]We take note of our decision in *Morris v. Cain*, 186 F.3d 581 (5th Cir. 1999), rendered several months after *Muhleisen*, in which we granted habeas relief to Morris, a Louisiana prisoner whose post-AEDPA federal petition alleged *Cage-Victor* error.  Morris was tried and convicted before *Cage* was handed down; he did not object at trial to the jury charge; his state habeas application was denied by the state trial court (finding any error harmless) and by the Louisiana Court of appeals (apparently without opinion), after *Cage* and before *Sullivan*, but the Louisiana supreme Court deneid writs (apparently with opinion) after *Sullivan*.  The *Morris* court noted that under *Humphrey II*, *Cage* and *Victor* apply retroactively on collateral review, and evaluated the merits of the *Cage-Victor* claim without citing *Muhleisen* or discussing the post-AEDPA retroactivity question.  There is, however, at least one important distinction between *Morris*, on the one hand, and *Muhleisen* (and the instant case) on the other hand, namely that Morris's conviction did not become final on direct appeal until *after Cage* was handed down.  Although this fact is not expressly addressed in *Morris*, it does appear from the opinion that "Morris's convictions were affirmed on direct appeal. *See State v. Morris*, No. 90-KA-0085, 568 So.2d 1172 (La. Ct. App. 1990).  Morris did not file a writ application with the Louisiana Supreme Court."  *Id.,* 186 F.3d at 583.  A reference to the citation given reflects that the Louisiana Court of Appeals affirmed Morris's conviction on October 30, 1990.  *State v. Morris*, 568 So.2d 1172 (La. Ct. App. 1990).  Under Louisiana law, Morris had thirty days to seek review of this decision in the Louisiana Supreme Court.  La. Sup. Ct. R. 10 § 4(b) (1990).  Accordingly, for *Teague* proposes Morris's conviction was not final before November 29, 1990.  *See, e.g., Lambrix v. Singletary*, 117 S.Ct. 1517, 1525 (1997) ("Lambrix's [state] conviction became final on November 24, 1986, when his time for filing a petition for certiorari expired.  Thus, our first and principal task is to survey the legal landscape as of that date . . .").  *Cage* was handed down November 13, 1990.  Thus, *Cage* was decided before Morris's conviction became final on direct appeal, and application of *Cage* to Morris's conviction could not violate the non-retroactivity rule of *Teague*.

We finally note that even if *Morris* and *Muhleisen* conflict, *Muhleisen*, as the earlier decision, is the controlling precedent. *See, e.g., Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998); *Boyd v. Puckett*, 905 F.2d 895, 897 (5th Cir. 1990).

16

We note in passing that even if *Cage* and *Victor* apply retroactively to Williams's petition, it is indeed doubtful that claim would succeed because the instruction at his trial does not appear to have exhibited the same constellation of factors that rendered the instruction in *Cage* constitutionally defective. The instruction given to the jury at Williams's trial contained three traditionally suspect terms, "grave uncertainty," "actual or substantial doubt," and "moral certainty," as well as the additional qualifier, known as an "articulation requirement," which equates a reasonable doubt with "a serious doubt for which you could give a good reason."

At the outset, we note that we would not consider whether the articulation requirement might have corrupted the reasonable doubt instruction because the Supreme Court "has never expressed disfavor with such language." *See Muhleisen*, 168 F.3d at 844 n.2. As explained above, "AEDPA only allows us to apply Supreme Court rulings, not our own rulings," such as *Humphrey I* and *II*, which perceived Due Process problems with that phrase. *Id.*

Regarding the other three phrases, the state trial court's use of "grave uncertainty" and "actual or substantial doubt" is materially indistinguishable from the instruction in *Cage*.[8] By

---

[8] There is one small difference. At Williams's trial, the court used the phrase "actual *or* substantial doubt," while in *Cage* the phrase was "actual and substantial doubt." While there is some conceivable difference between the two phrases, this Court has previously found that in the absence of any other mitigating words or phrases, the

17

contrast, the "moral certainty" phrase and its surrounding context bear a stronger resemblance to the constitutionally permissible instructions in *Victor.* In *Cage*, the "moral certainty" phrase stated that "[w]hat is required is not an absolute or mathematical certainty, but a *moral certainty*." *Cage*, 111 S.Ct. at 329 (emphasis in original). In this case, the "moral certainty" phrase provides that a reasonable doubt is "one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt." *Victor* considered two similar phrases[9] and found that the context of both phrases–language which instructed the jurors that their conclusion had to be based on the evidence–did not suggest, as the instruction in *Cage* had done, that moral certainty, instead of or as distinguished from evidentiary sufficiency, might be enough to convict. *See Victor*, 114 S.Ct. at 1248, 1250-51. Similarly, the "moral certainty" phrase here was

---

two phrases have the same intent behind them. *See Morris*, 186 F.3d at 587 n.8.

[9] The phrases were as follows:

"[Reasonable doubt] is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a *moral certainty*, of the truth of the charge." *Victor*, 114 S.Ct. at 1244 (emphasis in original).

"[Reasonable doubt] is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, to a *moral certainty*, of the guilt of the accused." *Id.* at 1249 (emphasis in original).

18

immediately preceded and followed by instructions that a reasonable doubt would spring from "the unsatisfactory character of the evidence" or if "you find the evidence unsatisfactory upon any single point indisputably necessary to constitute the defendant's guilt."  Moreover, only shortly before the jury was told that "[e]ven where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit."

Without a defective "moral certainty" phrase, the other two phrases in and of themselves do not render the instruction constitutionally defective.  *See Muhleisen*, 168 F.3d at 844 n.2 (noting that under *Cage*, these first two phrases only "suggest" a higher degree of guilt and need the third "moral certainty" to amount to a constitutional violation); *see also Dupuy v. Cain*, 201 F.3d 582, 586-87 (5th Cir. 2000) (denying successive petition and upholding instruction with only "good reason" articulation requirement and "moral certainty" phrase); *Thompson v. Cain*, 161 F.3d 802, 811-12 (5th Cir. 1998) (under AEDPA upholding instruction with "grave uncertainty" phrase and surrounding text that properly explained reasonable doubt standard); *Brown v. Cain*, 104 F.3d 744, 753-55 (5th Cir. 1997) (same); *Schneider v. Day*, 73 F.3d 610, 611-12 (5th Cir. 1996) (*per curiam*) (pre-AEDPA, upholding instruction with only "moral certainty" and "actual and substantial doubt" phrases).  Based on our reading of *Cage* and *Victor*, as well as the

19

fact that this case, in contrast to *Humphrey I* (*see id*. at 533) and *II*, was not even remotely close regarding Williams's guilt or innocence, we do not believe that Williams has demonstrated a reasonable likelihood that the jury applied the instruction unconstitutionally. *Cf*. *Depuy*, 201 F.3d at 587 (finding that where there is no serious question of guilt or innocence, as there was in *Humphrey*, the defendant must demonstrate prejudice from the instruction in order to avoid dismissal of his successive petition). In sum, even if we were to find that *Cage* and *Victor* apply retroactively to Williams's petition, it is indeed doubtful that Williams would prevail.

## Conclusion

For the reasons stated above, the district court's denial of Williams's petition is AFFIRMED.

20