IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-31044

---

RAYMOND L. COCKERHAM,

Petitioner-Appellee,

versus

BURL CAIN, Warden, Louisiana State Penitentiary,

Respondent-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

February 20, 2002

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

Respondent-appellant Burl Cain, Warden, Louisiana State Penitentiary (the State), appeals the district court's grant of *habeas corpus* relief as to Petitioner-appellee Raymond L. Cockerham's (Cockerham) 1986 Louisiana armed robbery convictions. We Affirm.

**Facts and Proceedings Below**

---

[1]Cynthia Holcomb Hall, Circuit Judge of the Ninth Circuit, sitting by designation.

On March 25, 1986, a jury of the Louisiana Orleans Parish Criminal District Court found Cockerham guilty of two counts of armed robbery. Cockerham was sentenced to two consecutive thirty year terms of imprisonment which he is currently serving in the Louisiana prison system. On direct appeal, Cockerham's counsel filed an "errors patent" brief that did not comply with *Anders v. California*, 386 U.S. 738 (1967). The Louisiana Fourth Circuit Court of Appeals affirmed. *State v. Cockerham*, 497 So.2d 796 (La. App. 4 Cir. 1986). In April 1994, the Fourth Circuit granted Cockerham an out of time appeal pursuant to *Lofton v. Whitley*, 905 F.2d 885 (5th Cir. 1990). Cockerham's conviction was again affirmed. *State v. Cockerham*, 671 So.2d 967 (La. App. 4 Cir. March 14, 1996), *writ denied*, 681 So.2d 363 (La. February 6, 1998).

Cockerham also filed a total of three State applications for post-conviction relief. The first was filed and denied in 1990. The second was filed in 1992 and was not considered because, as calculated from his errors patent appeal, it was untimely. The third was filed in January 1997, after his out of time appeal. It was in this third application that Cockerham first asserted that the reasonable doubt portion of his jury instruction was constitutionally defective, under *Cage v. Louisiana*, 111 S.Ct. 328 (1990). This application was denied by the trial court on March 3, 1997. The Louisiana Fourth Circuit Court of Appeals denied relief in June 1997. The Louisiana Supreme Court denied Cockerham's writ application in February 1998. *State ex rel Cockerham v. Louisiana*, 709 So.2d 727 (February 6, 1998). All three denials of

2

relief as to Cockerham's third application were without explanation.[2]

On April 8, 1998, Cockerham filed the present habeas petition pursuant to 28 U.S.C. § 2254. One of the proposed bases for relief was the *Cage* claim. On November 16, 1998, the district court ordered the State to produce a transcript or other evidence of the actual jury charge given at Cockerham's trial as well as any objections thereto. The State contacted the trial court but was informed that the trial transcript of the jury charge could not be found. The minutes of Cockerham's trial reflect that defense counsel objected to the jury instructions, but do not reveal the nature of the objection. In February 1999, the district court appointed the federal public defender to represent Cockerham. In May and June of 1999, Cockerham's habeas counsel filed the affidavits of Judge Leon A. Cannizzaro, Jr., the judge who presided at Cockerham's trial, and Philip R. Johnson, Cockerham's trial counsel. Judge Cannizzaro stated that it was his custom and practice to give the same jury instruction found unconstitutional in *Cage* and that he was not aware of any reason he would not have given this instruction at Cockerham's trial. Johnson stated that it was his general practice to object to the reasonable doubt instruction that was being read to jurors in that court during that time and that he has no reason to believe he did not object thereto at Cockerham's trial.

_____

[2]The trial court's order stated that it had denied Cockerham's petition. The Fourth Circuit's order stated that it found no error on the part of the trial court. The Louisiana Supreme Court responded with the single word "denied".

3

Johnson also referred to a portion of the trial transcript (which was found) in which he objected to a question by the prosecutor as to whether the witness is "positive to a moral certainty" that Cockerham was the perpetrator.

On August 27, 1999, the district court granted Cockerham's petition on the ground that the reasonable doubt instruction read to the jury was unconstitutional. The district court found that the reasonable doubt jury instruction given at Cockerham's trial was identical to that given in *Cage* and that defense counsel timely objected thereto. The district court further held that even if the deferential standards of 28 U.S.C. § 2254(d) applied, rejection of Cockerham's *Cage* claim was, as a matter of fact and law, unreasonable. The district court also rejected the State's argument that Cockerham's petition should be dismissed as a "delayed petition" pursuant to Habeas Rule 9(a). The district court ordered that the State retry Cockerham within 120 days or dismiss the charges. The State appeals. On December 21, 1999, this Court granted the State's motion for stay pending completion of appeal. On March 12, 2000, this Court ordered supplemental briefing on two issues: the effect of *Williams v. Cain*, 229 F.3d 468 (5th Cir. 2000) and when, for purposes of a *Williams* analysis, Cockerham's convictions became final.

## Discussion

I.   Standard of Review

We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *Fairman v. Anderson*, 188 F.3d 635, 640

4

(5th Cir. 1999).  As to the level of deference owed the state court's rejection of Cockerham's *Cage* claim, we are willing to assume *arguendo* that such rejection constituted an adjudication on the merits and that the deferential standards of 28 U.S.C. § 2254(d) apply.  These standards dictate that the State's denials of relief stand unless they were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court or were predicated upon an unreasonable determination of the facts in light of the evidence presented at the State proceeding.

II.  Habeas Rule 9(a)

The State maintains that the district court erred in failing to dismiss Cockerham's petition as untimely under Habeas Rule 9(a).  Rule 9(a) of the Rules Governing Section 2254 Petitions provides:

> "**Delayed Petitions.**  A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

In order to discharge its "heavy burden" in seeking dismissal under this rule, the State must: "(1) make a *particularized* showing of prejudice, (2) show that the prejudice was *caused* by the petitioner having filed a late petition, and (3) show that the petitioner has not acted with reasonable diligence as a matter of law."  *Walters v. Scott*, 21 F.3d 683, 686-87 (5th Cir. 1994) (emphasis in original) (footnote omitted). The district court found that the State could not make any of the

5

showings required by *Walters*. We need only observe that the State cannot satisfy *Walters'* second element because, as the State admits, there is no evidence as to when, or at or about what stage of any of the proceedings, the transcript or tapes of the jury charge were last available. No reversible error has been demonstrated in the denial of Rule 9(a) relief.[3]

III. Effect of *Williams*

The Anti Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), forbids any federal court from granting habeas relief based on a claim that was adjudicated on the merits in state court unless the State adjudication involved, *inter alia*, "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." (Emphasis added). In *Williams v. Cain*, 229 F.3d 468 (5th Cir. 2000), we considered the effect of the emphasized language on the applicability of new rules on federal habeas. A new rule is one that was not established until after the petitioner's conviction became final on direct appeal. *Id*. at 475 n.6. We held that unless the Supreme Court has clearly established that the new rule falls within one of the exceptions to the non-retroactivity principle of *Teague v. Lane*, 109 S.Ct. 1060 (1989), that new rule could not be considered with regard

---

[3]The State has not on this appeal raised any issue of procedural default (and none of the decisions of the Louisiana courts in Cockerham's case give any indication of relying on or having found any procedural default).

6

to petitions governed by the AEDPA. *Id*. at 475. We also observed that the Supreme Court had not yet held that the *Cage* rule satisfies any *Teague* exception. In *Tyler v. Cain*, 121 S.Ct. 2478 (2001), the Supreme Court made clear that it has indeed not yet held that the *Cage* rule satisfies any *Teague* exception (and that, therefore, *Cage* does not come within the 28 U.S.C. § 2244(b)(2)(A) exception to AEDPA's bar of successive petitions). Thus, under our decision in *Williams*, we can consider Cockerham's *Cage* claim only if his conviction became final after *Cage* was decided.

IV.   When Cockerham's Conviction Became Final

Cockerham's errors patent appeal was affirmed on October 9, 1986. Cockerham was granted an out of time appeal in 1994 which he pursued until the Louisiana Supreme Court denied review on February 6, 1998. *Cage* was decided on November 13, 1990. Whether *Cage* represents a new rule turns on when Cockerham's conviction became final—after resolution of his 1986 errors patent appeal or after his 1994-98 out of time appeal. Because a primary purpose behind the AEDPA and *Teague's* non-retroactivity rule is respect for the finality of state court judgments, we believe consideration of *Cage* is only appropriate if, under Louisiana law, Cockerham's conviction did not become final until his out of time appeal was resolved.

The Louisiana Code of Criminal Procedure sheds no determinative light on this question. Two decisions from the Louisiana Supreme Court do. First, in *State v. Fournier*, 395 So.2d 749 (La. 1981), Fournier was

7

convicted of simple burglary in 1973 and failed to appeal. At that time, the Louisiana Supreme Court had extended the statutory presumption of La.R.S. 15:432 "that the person in the unexplained possession of property recently stolen is the thief" to simple burglary. Subsequently, in *State v. Searl*, 339 So.2d 1194 (La. 1976), the Louisiana Supreme Court held that this presumption, as applied to simple burglary, was unconstitutional. After *Searl* was decided, Fournier obtained an out of time appeal. The *Fournier* court, after observing that it had previously "held that the rule of *Searl* was applicable to those cases not yet final prior that decision", went on to state "[T]his case is now before us as an out-of-time appeal and therefore defendant's conviction was not final prior to our decision in *Searl*." *Fournier*, 395 So.2d at 750. The dissent disagreed with the majority's conclusion that "an out-of-time appeal can affect the finality of the trial court's judgment." *Id*. at 751 (Chiasson, J. dissenting). Second, in *State v. Counterman*, 475 So.2d 336, 340 (La. 1985), the Louisiana Supreme Court characterized an out of time appeal as a "reinstatement of [the defendant's] right to appeal." The Louisiana Third Circuit Court of Appeal interpreted this language to mean that an out of time appeal should be treated as rendering the conviction non-final until resolution of the out-of-time appeal so as to entitle the defendant to the benefit of rules established before the out of time appeal was resolved. *State v. Boyd*, 503 So.2d 747, 750 (La. Ct. App. 3 Cir. 1987) (holding that the rule of *State v. Jackson*, 480 So.2d 263 (La. 1985), which stated that

8

it applied to "convictions which have not become final" when *Jackson* was decided, applied to cases which otherwise became final prior to *Jackson* but in which out-of-time appeal was granted after *Jackson*). *Contra State v. Johnson*, 598 So.2d 1288, 1292 (La. Ct. App. 4 Cir. 1992) (refusing to apply a state rule established before the defendant's second out of time appeal was resolved); *State v. Patterson*, 572 So.2d 1144, 1148 (La. Ct. App. 1 Cir. 1990) (refusing to apply *Batson v. Kentucky*, 476 U.S. 79 (1986) notwithstanding that the defendant's out of time appeal was resolved after *Batson*).

*Fournier* compels the conclusion that, for the purpose of determining whether the defendant may avail himself of a particular rule in challenging his conviction, the Louisiana Supreme Court would not consider Cockerham's conviction final until after his out of time appeal was resolved. We agree with the *Boyd* court that *Counterman* supports this conclusion as well. Neither *Johnson* nor *Patterson* cite *Fournier*. We conclude that the Louisiana Supreme Court's decision in *Fournier*, on point and never called into question by that court, controls. Accordingly, because Cockerham's out of time appeal was not resolved until after *Cage* was decided, Cockerham may avail himself of the benefit of *Cage*.

V.   Cockerham's *Cage* claim

The State maintains that under the deferential standards of the AEDPA, its denials of relief to Cockerham cannot be disturbed. 28 U.S.C. § 2254(d) provides:

9

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000) (concurring opinion), the Supreme Court clarified section 2254(d)(1)'s standards:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

We now review the legal principles governing Cockerham's *Cage* claim. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 90 S.Ct. 1068, 1073 (1970). In *Cage*, the Supreme Court held that a reasonable doubt instruction ran afoul of *Winship* and violated the Due Process Clause because, when read "as a whole," it "equated a reasonable doubt with a 'grave uncertainty' and an 'actual substantial doubt,' and stated that what was required was a

10

'moral certainty' that the defendant was guilty." *Id*., 111 S.Ct. at 329. The combination of these terms resulted in an instruction authorizing conviction based on a lesser degree of proof than required by the Due Process Clause.

In *Estelle v. McGuire*, 112 S.Ct. 475, 482 n.4 (1991), the Supreme Court clarified that the standard was not whether a reasonable juror "could have interpreted" the instruction unconstitutionally, as stated in *Cage*, but rather whether there was a *reasonable likelihood* of unconstitutional interpretation. In *Victor v. Nebraska*, 114 S.Ct. 1239, 1242 (1994), the Court upheld two instructions that contained some, but not all, of the three suspect phrases in *Cage*. The Court reasoned that the phrases "moral certainty" and "substantial doubt" did not impermissibly lower the government's burden of proof because the context of the instructions clarified the meaning of the terms as being congruent with reasonable doubt.

The district court found that the reasonable doubt instruction given at Cockerham's trial was identical to that given in *Cage*. The State does not contest this finding and, in any event, it is not clearly erroneous. We agree with the district court that if the State's unexplained denials of relief on the *Cage* claim were predicated on some other determination of the facts, such determination was unreasonable under 28 U.S.C. § 2254(d)(2) because there is nothing to indicate that the state courts which may have ruled on the *Cage* claim had before them any evidence as to what reasonable doubt charge was given at Cockerham's

11

trial.

It is also possible that the Louisiana courts denied relief as a matter of law, i.e. that they found that the instruction in *Cage* was not unconstitutional under *McGuire's* "reasonable likelihood" test. The State accurately points out that the Supreme Court has never held the *Cage* instruction unconstitutional under the *McGuire* standard. The State also calls attention to the fact that in *Sullivan v. Louisiana*, 113 S.Ct. 2078 (1993), the Court observed in respect to an instruction "essentially identical to the one held unconstitutional in *Cage*", *Sullivan* at 2080, that, because the State had not properly raised the issue, the Court would not address whether such an instruction "would survive review" under the *McGuire* test. *Sullivan* at 2081 n.1. We are ultimately not persuaded by this line of argument, however abstractly appealing it may be. Here the district court's *unchallenged* finding is that the instruction given was identical to that given in *Cage*. In *Cage* the Supreme Court held that such an instruction was constitutionally erroneous as authorizing conviction on a lesser degree of proof than required by the beyond a reasonable doubt standard mandated by the due process clause.[4] What the State asks us to do is essentially to hold

_____

[4]We note that here the district court found that the evidence against Cockerham was not in any way compelling. We agree. The State does not argue that if the instruction were constitutionally erroneous as improperly diluting the beyond a reasonable doubt requirement that any such error was nevertheless harmless because the evidence was compelling. We also observe in *Sullivan* the Court held that an instruction which authorized conviction on a lesser degree of proof than required by the beyond a reasonable standard of the due process clause

12

that the very instruction which *Cage* held to be constitutionally erroneous is not constitutionally erroneous.  We must, however, leave any such overruling of the precise holding in *Cage* to the Supreme Court.  *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).  The State also relies on *Victor v. Nebraska*, 114 S.Ct. 1239 (1994).  While *Victor* stated that the constitutional validity of a reasonable doubt instruction was to be judged under the "reasonable likelihood" test of *McGuire*, *see Victor* at 1243, *Victor* clearly based its holding that the instructions there were not constitutionally invalid on the differences in the wording of the instructions then before it from those held invalid in *Cage*.  *Victor* at 1248-51.  Since the instructions at issue here are identical to those in *Cage*, *Victor* cannot carry the day for the State.

Accordingly, any decision by the Louisiana courts that the reasonable doubt instruction here was constitutionally valid was contrary to clearly established Federal law, as determined by the Supreme Court of the United States, inasmuch as the identical instruction was held constitutionally invalid by the Supreme Court in *Cage*.  Accordingly, since Cockerham's conviction did not become final until after *Cage* had been handed down, section 2254(d) does not bar habeas relief in his case.

## Conclusion

was "structural" error and not subject to harmless error analysis.

13

For the reasons stated, we affirm the district court's grant of Cockerham's petition for writ of habeas corpus.

AFFIRMED